I am authorized to say that LEE, J., concurs in this dissent.

The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Mary E. ARCHULETA, Defendant–Appellee.

No. 80SA238.

Supreme Court of Colorado, En Banc.

Sept. 22, 1980.

J. E. Losavio, Jr., Dist. Atty., Amy S. Isaminger, Deputy Dist. Atty., Pueblo, for plaintiff–appellant.

Alex J. Martinez, Deputy State Public Defender, Pueblo, for defendant–appellee.

DUBOFSKY, Justice.

The People brought this interlocutory appeal under C.A.R. 4.1 after the trial court suppressed the statements made by the defendant subsequent to her arrest. We reverse the trial court's ruling and remand for further proceedings.

At about 1:20 a. m. on October 28, 1979, a fatal stabbing occurred at the Latin Quarter Tavern in Pueblo. Officer Avery of the Pueblo Police Department began to search for the suspect, Simon Luna, whom he knew, and a woman companion with whom Luna had allegedly left the bar in a red and black Monte Carlo. As the officer drove to the neighborhood where Luna was believed to live, he passed a red and black Monte Carlo driven by a woman accompanied by a single passenger. He turned his patrol car around to pursue them, lost sight of the car momentarily, and found it parked, unoccupied, behind the East Side Tavern. The officer unsuccessfully searched the tavern for Simon Luna. The car, which was registered to Simon Luna, was towed away.

Officer Avery waited to see if anyone would appear to claim the Monte Carlo. When the East Side Tavern closed at 2:00 a. m., the patrons, with the exception of two women, drove away. The officer stopped the women and asked them their names and what they had been doing that evening. After they told him they had been drinking at the East Side Tavern all evening, he gave their identification back, and started his car.

At the time, Officer Avery knew that Officer Spurlock of the Pueblo Police Department was checking past arrest records for the name of a woman who had been with Simon Luna when he was arrested on a prior occasion. Just as Officer Avery began to drive away, Officer Spurlock reported to Avery that the name of the woman was Mary Archuleta, the defendant here. The name of one of the women stopped by Avery was Mary Archuleta. Based on this additional information, the officer arrested the women, advised them of their rights, and took them to the Pueblo Police Department.

The defendant first denied that she had been anywhere except the East Side Tavern that evening. When the woman who was with her told the police that the defendant knew about the stabbing, the defendant confessed that she and Luna had gone to the Latin Quarter where her husband, John Archuleta, tried to strike her. Luna intervened and John Archuleta was stabbed in the scuffle that ensued.

The defendant was charged with the offense of accessory to a crime. Section 18–8–105, C.R.S. 1973 (now in 1978 Repl. Vol. 8).[1] On April 28, 1980, the trial court

---

1. Section 18–8–105 provides in part:
   "*Accessory to crime.* (1) A person is an accessory to crime if, with intent to hinder, delay, or prevent the discovery, detection, apprehension, prosecution, conviction, or punishment of another for the commission of a crime, he renders assistance to such person.

   (2) "Render assistance" means to:
   (a) Harbor or conceal the other; or
   (b) Warn such person of impending discovery or apprehension; except that this does not apply to a warning given in an effort to bring such person into compliance with the law; or
   (c) Provide such person with money, transportation, weapon, disguise, or other thing to

granted the defendant's motion to suppress her statement on the basis that the police officer's initial stop was illegal under *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971); *Dunnaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The trial court reasoned that Officer Avery knew only that the offense had been committed by Simon Luna and that neither of the women was Simon Luna. The officer did not know either of the women, and after they identified themselves, the identification meant nothing to him. The connection between one of the women and Simon Luna appeared only after he made his initial stop. The court also found that neither of the women had committed a crime, and therefore, that the arrest was improper under section 16–3–102(1)(c), C.R.S. 1973 (now in 1978 Repl. Vol. 8).

The prosecution contends that Officer Avery had reasonable and articulable suspicions when he initially stopped the defendant, that the initial stop was lawful, and the statements voluntarily made are admissible because they were made after a lawful arrest and proper advisement under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant argues that she was detained and arrested as a material witness and not as a suspect. Therefore, she claims that the initial detention failed to comply with *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)—which held that the police must have a reasonable suspicion that a crime has been committed by the person detained.

We first consider whether the facts here meet the standards established in *Stone v. People, supra*, for determining the legality of an investigatory stop. *Stone* requires that:

"In order lawfully to detain an individual for questioning, (1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) The purpose of the detention must be reasonable; and (3) The character of the detention must be reasonable when considered in light of the purpose."

174 Colo. at 509, 485 P.2d at 497. *See also Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (Identification stop must be based on reasonable and articulable suspicion.); section 16–3–103(1), C.R.S. 1973 (now in 1978 Repl. Vol. 8).

■ The record demonstrates that these criteria were satisfied. Officer Avery knew that a woman had left the murder scene with Simon Luna. He had a description of the car they were driving. He later followed an identical car, driven by a woman, to the East Side Tavern. An inquiry disclosed that the car was registered to Simon Luna. After the car was towed, the two women were the only patrons who did not drive away when the tavern closed. Because these interrelated factors were sufficient to arouse a reasonable and articulable suspicion of criminal activity [*People v. Johnson*, Colo., 605 P.2d 46 (1980); *People v. Waits*, 196 Colo. 35, 580 P.2d 391 (1978); *People v. Tooker*, Colo., 601 P.2d 1388 (1979)], Officer Avery possessed enough information to stop the defendant for investigatory purposes shortly after she left the tavern. The ensuing detention was brief and the information requested was exactly that allowed by statute.[2]

■ The defendant's argument that she was detained as a witness and not a suspect is not persuasive. She did not have to be suspected of murder to be suspected of

be used in avoiding discovery or apprehension; or

(d) By force, intimidation, or deception, obstruct anyone in the performance of any act which might aid in the discovery, detection, apprehension, prosecution, conviction, or punishment of such person; or

(e) Conceal, destroy, or alter any physical evidence that might aid in the discovery, detection, apprehension, prosecution, conviction, or punishment of such person."

2. Section 16–3–103(1), C.R.S. 1973, provides:

"A peace officer may stop any person who he reasonably suspects is committing, has committed, or is about to commit a crime and may require him to give his name, address, and an explanation of his actions. The stopping shall not constitute an arrest."

criminal conduct. The defendant was charged with accessory to a crime under section 18–8–105. The police may detain and require identification of a person if they have a reasonable suspicion, based on objective facts, that the person is involved in criminal conduct. *Delaware v. Prouse, supra.*

Because the trial court found the "*Stone* stop" improper, it also found that Officer Avery had no probable cause to arrest the defendant. The court concluded that "[H]ad it not been for [Officer Avery's] improper stopping of the women, he would never have made the connection." Our holding negates the premise upon which the trial court based its ruling that the arrest was invalid. Consequently, we remand the case to the trial court for a determination of whether the officer had probable cause to arrest the defendant.

As a result of our finding the initial stop valid, we reverse the trial court's order and remand the cause for further proceedings to determine whether there is sufficient evidence in this record to find probable cause.

HODGES, C. J., and ERICKSON, J., do not participate.