No. 23499.

WILLIAM J. STONE *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(485 P.2d 495)

Decided May 17, 1971.    Rehearing denied June 14, 1971.

Rollie R. Rogers, State Public Defender, J. D. Mac Farlane, Chief Deputy, Edward H. Sherman, Public Defender in and for the City and County of Denver, Truman E. Coles, Chief Deputy, Richard E. Wood, Assistant, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, George E. DeRoos, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Groves delivered the opinion of the Court.

The plaintiff in error was the defendant in a criminal case (and will be so referred to), and was convicted of possession of a narcotic drug, heroin. He seeks reversal on writ of error, but we affirm.

The defendant offered no evidence in the trial before the jury. He did testify in an *in camera* hearing on his

objection to the admission of evidence found in his car. The arresting officer was a Denver narcotics agent named Mulnix, and his testimony at the *in camera* hearing was in some respects different from that of the defendant. The judge overruled the defendant's objections, and from the record it is apparent that he accepted Mulnix's version of the facts rather than that of the defendant. Most of our statement of the facts which follow is from the Mulnix testimony.

Mulnix had obtained information from an informant to the effect that the defendant was then selling marijuana and heroin and was using heroin. Mulnix kept the defendant under surveillance off and on for over two days. At the conclusion of the surveillance in mid-afternoon Mulnix was following the defendant on a one-way street. The defendant parked his vehicle and emerged therefrom. As the defendant was proceeding across the street from his car, Mulnix stopped to the rear of the defendant's car and said to the defendant, "Hold it there, Bill." The defendant continued to the other side of the street, and Mulnix drove his car to that side of the street, where the defendant had stopped. Mulnix asked to see the defendant's driver's license and, immediately after asking the question and before there could be any response thereto, Mulnix noticed fresh needle marks on the defendant's arm. He thereupon told the defendant that he was under arrest. A few minutes later and as soon as another officer arrived on the scene, the defendant's car was searched. The defendant's wallet with a capsule of heroin lying adjacent thereto were in the center of the front seat.

The surveillance was for the purpose of ascertaining the defendant's place of residence. It consisted of following the defendant as he travelled around. Mulnix did not know and had been unable to ascertain the defendant's abode. He had found that the address given in connection with the registration of defendant's car was a vacant building and that defendant no longer resided

there. Mulnix testified that the reason he asked to examine the driver's license was to see if the defendant's present address had been placed thereon. He further testified that he was not concerned with traffic violations, but his only interest in the driver's license was to attempt to obtain the defendant's present address.

■ There is no question in our minds that the observation of the fresh needle marks, together with the background information possessed by Mulnix, constituted probable cause for the arrest. However, prior to the time Mulnix observed these needle marks, the background information in itself, including that which had been obtained from the unknown informant, was insufficient to constitute probable cause to arrest. The close and troubling question is whether Mulnix violated the defendant's Fourth Amendment rights by stopping him and asking to examine his driver's license.

■ We have considered the possibility that the defendant was free to move along after Mulnix called out, "Hold it there, Bill." This would permit us to say that there was no "seizure" under the Fourth Amendment and relieve us of the necessity of passing on whether or not a *reasonable* "seizure" was involved. We think it better, however, to recognize that a substantial percentage of people when asked by a police officer to stop will obey the request, and many individuals in this situation would feel that they were not free to go. Realistically, "there can be no casual disregard of on-the-street police questioning." Leventhal, J., in *Bailey v. United States,* 389 F2d 305 (1967). We, therefore, assume that when Mulnix asked the defendant to "hold it," he made a "seizure" under the Fourth Amendment which proscribes unreasonable searches and seizures.

■ There is an area of proper police procedure in which an officer having less than probable cause to arrest nevertheless may detain an individual temporarily for certain purposes and not violate the unreasonable search and seizure limitation of the Fourth Amendment. The

detention by Mulnix of the defendant in this instance from the time he asked him to stop (for the purpose of inspecting his driver's license) until he saw the fresh needle marks comes within this area. Since we are dealing with a matter of first impression, we will call this the "Stone area."

■ In order lawfully to detain an individual for questioning, (1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose.

■ It would be impossible to visualize all potential situations which might fall within the Stone area, and guidelines involving different factual situations must come in future decisions as different events occur and are brought to our attention. We go to the following extent here: when an officer reasonably suspects that the person has committed a crime or is about to commit a crime and the officer has not identified the person he legally may stop him to question him about his identity. If ascertainment on the part of an officer of a person's address is reasonably material to the duties being performed by that officer, and if there is the reasonable suspicion just mentioned, the officer may detain the individual for the purpose of questioning as to his address. Since the purpose here of inspection of the driver's license was to obtain the defendant's address, we regard this request as no more intrusive than verbal questions concerning the address. We are of the view, therefore, that Mulnix remained within the permissible Stone area and did not violate defendant's Fourth Amendment rights.

■ Our attention has not been directed to any case squarely in point with this one, and our own research has not unearthed one. There is, however, ample analogous authority to support the result reached here. Initially, it is to be noted that in the adoption of Crim. P. 41.1 this court recognized that there can be a seizure

for some purposes when there is less than probable cause involved. By that rule a judge may enter an order allowing the finger prints of an individual to be obtained when it is shown by an affidavit that (1) a known criminal offense has been committed, (2) that there is reason to suspect that the individual is connected with the perpetration of a crime, and (3) that the individual's finger prints are not in the files of the applying agency.[1] These standards are analogous to those set forth above for stopping and questioning in the Stone area.

The same guidelines were established by *People v. Rivera,* 14 N.Y.2d 441, 201 N.E.2d 32 (1964), concerning an incident which occurred prior to the passage of New York's statute permitting stops for the purpose of frisking or of demanding that the individual state his name, address and explanation of his actions. N.Y. Code of Criminal Procedure, § 180-a. It appears to us that this code provision is a legislative enactment of substantially the same thing as was held in *Rivera.* We are not unmindful of the fact that *People v. Peters,* 18 N.Y.2d 238, 219 N.E.2d 595 (1966), was affirmed on grounds other than those stated in the New York Court of Appeals' opinion (*Peters v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), and that when the United States Supreme Court considered *People v. Morales,* 22 N.Y.2d 55, 238 N.E.2d 307 (1968) it sent the matter back for further hearing and findings (*Morales v. New York,* 396 U.S. 102, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969)). Nevertheless, we find the New York Court of Appeals' decisions in *Peters* and *Morales* quite persuasive here. We feel, furthermore, that our reasoning here is similar to that in the majority opinion and one of the concurring opinions (Harlan, J.) in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Also *see John Doe v. Murphy,* 275 A.2d 205 (D.C. 1971), and *Yam Sang Kwai v. Immigration & Naturalization Service,* 411 F.2d 683 (1969).

---

[1] The rule has an alternate ground not material here.

█ We wish to emphasize that this opinion does not grant free license to law enforcement officers to stop an individual to obtain identification or address. For an example of prior information possessed by a police officer not being sufficient to bring the matter within the guidelines set forth above, *see People v. Albright,* 32 App. Div. 2d 878, 302 N.Y.S.2d 213 (1969).

█ The defendant has advanced two further assignments of error: loss of exhibits and incompetence of trial counsel. The exhibits were negatives of pictures portraying the arms of the defendant. These were admitted in evidence only during the hearing on the suppression motion for the purpose of corroborating Mulnix' testimony concerning the fresh needle marks. Prior to the time the record was filed here it was discovered that the exhibits had been lost. The defendant contends that the negatives did not show fresh needle marks; that we cannot properly review this matter without observation of the negatives; and that therefore, he is entitled to a new trial. As there was competent oral testimony by Mulnix on the fact of needle injection marks, the loss of the negatives pending review, regardless of whether they support Mulnix' testimony, could not affect the trial court's determination.

█ The defendant raises two points in connection with the alleged incompetency of trial counsel. The first is that counsel did not call to the stand and examine witnesses as desired by the defendant. We have recently held that this does not constitute reversible error. *Martinez v. People,* 173 Colo. 515, 480 P.2d 843 (1971).

In the defendant's brief here he asserts for the first time that his trial counsel prevented him from taking the witness stand, and that at the trial he wished to testify. There is nothing in the record to support this assertion and, judging from one instance, one might infer that the contention is incorrect. This was an incident in which the defendant himself, out of the presence of the jury, stated that he would prefer that the

judge not give the stock instruction concerning his failure to testify. While somewhat speculative, this appears to be a time when he would have expressed his desire to have testified.

Shortly after this case was docketed within this court the defendant filed a motion for post-conviction relief under Colo. R. Crim. P. 35(b). The hearing was held by the trial court. The only matter which the defendant presented was his right to a new trial by reason of the loss of the exhibits. The motion was denied. Ordinarily, a defendant would have been expected to raise the matter of competency of counsel in the 35(b) proceeding. We are not unmindful, however, of the difficulty in doing this as his trial counsel was still representing him, and this same counsel prepared the motion for new trial, which does not mention the subject. New counsel has come into the case only in connection with the proceedings here. Under these particular circumstances, if the defendant wishes to continue to urge the point of incompetency of counsel by reason of counsel preventing defendant from testifying, he may wish to attempt to raise the point in a further 35(b) proceeding in the trial court.

Judgment affirmed.

MR. JUSTICE KELLEY concurs in the result.