## No. 79SA318

### The People of the State of Colorado v. Marcell Johnson

(605 P.2d 46)

Decided January 7, 1980.

Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, for plaintiff-appellant.

Donald A. Brenner, for defendant-appellee.

*En Banc.*

JUSTICE ERICKSON delivered the opinion of the Court.

This interlocutory appeal was taken by the prosecution. The district court suppressed physical evidence seized from an automobile driven by the defendant prior to his arrest, and also entered an order suppressing statements made by the defendant after his arrest. We reverse and remand for further proceedings consistent with this opinion.

On November 29, 1978, at approximately three o'clock in the morning, Denver Police Officer Northern was patrolling in the general neighborhood of East 11th Avenue and Syracuse when he heard a simulcast on his radio that a 7-11 Store had been robbed nearby. The police report described the robber as a Negro male, wearing a brown coat and blue shirt, who used a tan scarf to cover his face. According to Officer Northern, the report stated that a sum of money and some Kool cigarettes were taken.

In response to the police report, the officer pulled over to a filling station on 11th and Syracuse to watch for a vehicle, which might be coming

directly from the scene of the robbery. Officer Northern testified that he thought the robbers might be in his area because on that night three 7-11 Stores in that vicinity had been robbed, and the officer knew that certain individuals who had previously been involved in armed robberies lived in a large apartment complex at 11th and Syracuse.

For the next three to five minutes, the officer waited in his car at 11th and Syracuse. He testified that traffic was very light during the first half-hour preceding the report of the robbery, and that the defendant's car was the first car he saw after the robbery was reported in the police broadcast. The defendant's car, which arrived at a time approximating the time required to traverse the distance from the the the robbery scene, turned north on Syracuse, and its occupants, Negro males, took visible note of Officer Northern and his marked police car.

Officer Northern followed the defendant's car as it travelled north on Syracuse. Before he had proceeded half a block, however, the car made a "U-turn" and pulled into a "Shoppette" parking lot. The officer saw one of the occupants of the car leave the vehicle, walk behind the building out of sight, and return to the car. The car then proceeded north on Syracuse, with Officer Northern following. Two blocks later, the car pulled over to the curb and stopped.

After the vehicle had stopped, Officer Northern turned on his emergency equipment and, using his public address system, ordered the vehicle's occupants to stay in the car. Prior to that order, Officer Northern had requested backup assistance, and other officers arrived within a few minutes of the stop.

Officer Northern and another officer then approached the car, and Officer Northern shined a flashlight into the backseat of the car. According to his testimony, one of the individuals in the backseat matched the description of the robber.

Subsequent to spotting the individual matching the description of the robber, Officer Northern ordered the occupants to get out and place their hands on the top of the car. As the suspected robber came out of the backseat, money and packages of Kool cigarettes fell from his pockets. The occupants were frisked and placed under arrest.

While the defendant and other occupants were outside the vehicle, one of the assisting officers shined a flashlight into the backseat of the car. He spotted a tan scarf and a gun lying in plain view on the rear floor. He seized both items.

The defendant in this case, who was the driver of the car, was taken directly to the police station. After being advised of his *Miranda* rights, he was interviewed by two detectives, and he confessed to driving the car while a series of 7-11 Store robberies were completed.

When charges were filed, the defendant moved to suppress the evidence seized in the car as the product of a constitutionally prohibited

warrantless search. The defendant also moved to suppress the confession on the grounds that it was involuntary and the product of certain express and implied promises by the interrogating detectives.

At a hearing on the defendant's motions, the trial judge *sua sponte* raised the question of the propriety of the initial stop. After taking testimony on this issue, the court held that the stop was not based on probable cause and did not qualify as a temporary detention under *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971). The court then ordered the suppression of the evidence and the statements as products of the illegal arrest. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

■ *Stone v. People, supra*, declared that an officer may lawfully detain an individual for questioning when he has less than probable cause to make an arrest, provided that:

"(1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose."

*Cf. Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). (Identification stop must be based on reasonable and articulable suspicion.) The trial judge in this case held that Officer Northern did not have a reasonable and articulable suspicion that one or more of the occupants of the vehicle had robbed the 7-11 Store. We disagree.

■ The record shows that Officer Northern based his stop not on mere whim or an unsubstantiated hunch, but, in fact, had reasonable and articulable suspicions. *Cf. People v. Casias*, 193 Colo. 66, 563 P.2d 926 (1977); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (Harlan, J. concurring). First, the officer in this case had more than 10 years experience on the Denver Police force, and knew that the area surrounding 11th and Syracuse had been subjected to several robberies that evening and that individuals who had committed robberies lived in the area. Second, the defendant's car, bearing individuals who could have matched the description given in the police report, appeared at approximately the time expected of a vehicle coming from the scene of the robbery, and immediately proceeded away from the marked patrol car. Third, when Officer Northern followed the occupants, they immediately made a U-turn, which could have reasonably served to reenforce Officer Northern's suspicions that the individuals in the car were trying to avoid contact with the police. Finally, the activities of one of the vehicle's occupants at the Shoppette, which is not unlike a 7-11 Store, may have suggested to Officer Northern that these individuals may have been involved in the earlier robbery.

The defendant argues that Officer Northern's suspicions were not reasonable when measured against the facts in *People v. Waits*, 196 Colo. 35, 580 P.2d 391 (1978). In *Waits*, we stated that although the police officers did not directly observe the commission of a crime, or even a traffic violation, that certain evasive maneuvers were sufficient to raise a reasonable suspicion of criminal activity:

"Without dwelling on the obvious, it is sufficient to observe here that the clear inference to be drawn from the appellee's sudden change of course was that he wished to avoid any police contact."

Here, when all of the interrelated circumstances were considered, they were sufficient to raise a reasonable and articulable suspicion of criminal activity.

Once it has been established that the stop was predicated on reasonable and articulable suspicion, the question remains whether the character and purpose of the detention was reasonable. We answer the question in the affirmative.

Officer Northern testified that after turning on his emergency lights he ordered the occupants to remain in their vehicle. Given the late hour and the fact that Officer Northern was alone, such an order was not unreasonable. *People v. Gurule*, 175 Colo. 512, 488 P.2d 889 (1971). In our view, the minimal period of detention here was justified by the officer's legitimate fears for his own safety.

After the backup units arrived, Officer Northern and another officer approached the automobile to determine the identities of its occupants. As Officer Northern approached the car from the driver's side, he shined his flashlight into the vehicle and saw that one individual matched the description of the robber given in the simulcast.[1] The occupants were then

---

[1] At the end of cross-examination, Officer Northern was asked at what point he identified the individual matching the description of the robber. He stated that he made the identification after conducting a frisk of the occupants. When he was given a chance to clarify his statements on redirect, however, he gave the following testimony:

"Q: Officer Northern, when did you first realize that one of the occupants of the car fit the description that had been aired?

"A: As I first walked up to the vehicle and shined my flashlight in the back seat."

On the second day of the hearing, Officer Northern was recalled to the witness stand and was again questioned about his conduct prior to arrest:

"Q: Did there come a time that you noticed that one of the occupants of the car matched the description that had been aired?

"A: Yes Sir.

"Q: At what point was that?

"A: When I walked up and shined my flashlight into the car and saw who was in the car.

"Q: When you looked in the car with your flashlight, what exactly did you see that alerted you to any similarity with the broadcast that you heard?

"A: The person that was sitting in the rear seat fit the description of the broadcast."

In light of the trial judge's finding that Officer Northern was a credible and honest witness, we are persuaded by his later statements that the identification was made prior to ordering the occupant out of the car.

ordered out of the car, frisked, and arrested.

The defendant argues that such steps constituted an unreasonable detention and were contrary to *Stone*. We have held, however, that an officer may use a flashlight during a *Stone* stop to view the inside of a vehicle. *People v. Waits, supra.* In this case, once Officer Northern matched the individual in the backseat with the description of the robber, particularly in light of other facts known to him, there was probable cause to arrest.[2] *Chambers v. Moroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *People v. Lucero*, 182 Colo. 39, 511 P.2d 468 (1973). Consequently, the remaining steps, although arguably beyond the purview of a *Stone* stop, were justified as part of a valid arrest.

The facts of this case are not unlike those present in *People v. Lucero, supra.* In that case, police officers were advised by radio of an attempted robbery and were given a description of the assailant. According to the report, the robber had escaped in a dark blue car, possibly a Ford Falcon. A short time after hearing the report, a police officer spotted a car matching the description and he initiated an investigatory stop. As the officer neared the car, he noticed that one of the occupants matched the description of the robber. Consequently, the officer made an arrest. This Court held that there was probable cause to arrest when the officer matched the individual with the reported description. *Compare Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

The record established that Officer Northern initiated a *Stone* stop based on a reasonable and articulable suspicion that one or more of the vehicle's occupants had been involved in the 7-11 Store robbery. As he walked up to the car to ask for identification, however, he determined that the individual in the backseat of the car matched the description of the robber. At that point, which was prior to any demands that the occupants come out with their hands up, Officer Northern's reasonable and articulable suspicion was converted into probable cause for arrest of the defendant. He was then justified in ordering the occupants out of the car.

As a result of our holding that the arrest was valid, we reverse the trial court's holding that the evidence and statements should be suppressed as fruit of the poisonous tree.

---

[2] Probable cause, which is the touchstone for warrantless arrests, has been defined by this Court to exist where:

"[T]he facts and circumstances within the officer's knowledge, and of which they had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed."

*Gonzales v. People*, 156 Colo. 252, 398 P.2d 236 (1965), *cert. denied*, 381 U.S 945, 85 S.Ct. 1788, 14 L.Ed.2d 709. *See Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *People v. Navran*, 174 Colo. 222, 483 P.2d 228 (1971); *People v. Bueno*, 173 Colo. 69, 475 P.2d 702 (1970); *People v. Clark*, 173 Colo. 129, 476 P.2d 564 (1970).

Accordingly, we remand for further proceedings consistent with this opinion.

JUSTICE GROVES, JUSTICE DUBOFSKY and JUSTICE LOHR dissent.

JUSTICE GROVES, DUBOFSKY and LOHR dissenting:

We respectfully dissent as we are unable to agree that the trial court's findings of fact and the underlying record supports the majority's conclusion that probable cause existed to justify the arrest.

We agree with the majority that the facts known to Officer Northern at the time he told the occupants to stay in the car after it had stopped at the curb were sufficient to justify a valid *Stone* stop. *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971). The facts, as detailed in the majority opinion, justified a reasonable and articulable suspicion that at least one of the car's occupants had been involved in the recent and nearby robbery of the 7-11 store.

The issue, however, is not simply whether the initial stop was reasonable and justified under *Stone* and its progeny. The crucial issue here is whether there was probable cause to arrest the defendant at the time the arrest was made.

This court's opinion that the stop was valid makes it essential that events subsequent to the stop be analyzed in light of applicable legal standards in order to determine whether the motions to suppress should be granted. The trial court did not find it necessary to make the detailed findings of fact and conclusions of law appropriate to such analysis because of its threshold conclusion that the stop was invalid.

Examination of the record reveals contradictory and inconsistent testimony pertinent to that issue. The trial court's ruling does not contain findings of fact necessary to the resolution of the second issue. This absence becomes significant once it is recognized that the stop was valid.

It is not at all clear from the testimony that new knowledge, sufficient to amount to probable cause, accrued to Officer Northern between the time of the stop and the arrest. The majority accepts as dispositive Officer Northern's testimony that as he approached the car he pointed his flashlight into it and saw in the rear seat a man resembling the broadcast description of the robber. The majority gives no weight to Officer Northern's initial testimony on cross-examination that not until he had frisked both men did he notice the resemblance of one of them to the broadcast description.

"Q. Now, let's proceed. You stopped the persons, you got on your microphone, and you said, 'Hey, don't get out of the car,' and so forth. Officer Greer came on the scene. What happened at that point. You took the

persons out of the car?

"A.   Yea. He approached from the right, and I approached from the driver's side. We ordered all the occupants out of the car with their hands up on the car.

"Q.   Okay. When were the persons placed under arrest.

"A.   When I first took them out of the car and put them up against the car, I told them that I was investigating an aggravated robbery, keep their hands on the car, and I started to frisk the subject that I had — I had two on my side — and started frisking those two on the driver's side, and then that was it.

"Q.   Would you answer my question? When did you place the persons under arrest?

"A.   Okay. After I frisked them, I noticed that one of the subjects fit the description that was aired over the air. That was the subject that got out of the rear seat. He is also the one that had the money falling out of the pocket. Okay. I told the subjects, after the frisk, that they were under arrest for investigation of aggravated robbery."

Testimony of others does not contribute to a clarification of the facts. The testimony of Officer Greer, the other arresting officer, gives no indication that before they ordered the car's occupants to get out either he or Officer Northern saw that the person in the rear seat matched the broadcast description. The defendant testified that he never noticed a flashlight.

The trial court's finding of fact is silent as to the officers' actions as they approached the vehicle and are inconclusive as to the content of the broadcast description of the robber. Because the court was focusing upon the validity of the initial stop, no mention is made of whether flashlights were used for identification purposes, or whether or when Officer Northern noticed the resemblance.

Also, under the record the trial court could have found that the discovery of the scarf and gun was either prior or subsequent to the defendant's arrest.

As recognized by the majority, one fact crucial to a finding of probable cause to arrest is the exact time Officer Northern noticed the resemblance. In view of the contradictory testimony and the incomplete findings of fact, we believe it unwise for the majority to emphasize some and disregard other testimony.

This case should be remanded for further proceedings. We consider it inadvisable to attempt to define or limit the additional issues to be resolved by the trial court, and would simply remand for further proceedings consistent with this court's opinion that the intitial stop was justified pursuant to *Stone v. People, supra.*