The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Charles WEEAMS, Defendant-Appellee.

No. 83SA58.

Supreme Court of Colorado, En Banc.

June 27, 1983.

---

Robert R. Gallagher, Jr., Dist. Atty., Eighteenth Judicial Dist., Catherine DiSante, Deputy Dist. Atty., Littleton, for plaintiff-appellant.

David F. Vela, State Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for defendant-appellee.

ERICKSON, Chief Justice.

In this interlocutory appeal, taken pursuant to C.A.R. 4.1, the prosecution seeks reversal of an order suppressing evidence seized at the time of the defendant's arrest, as well as a confession obtained when the defendant was questioned at the police station. We reverse the order suppressing the physical evidence and decline to consider the issue relating to the suppression of the defendant's confession.

## I.

On August 23, 1982, Charles Weeams, the defendant, and Willie Frank Guffie were arrested for murder, attempted murder, and for two counts of armed robbery. At approximately 1:15 on the morning of August 23, 1982, the Aurora police received a call reporting an armed robbery at 1135 Florence Street. The report described the suspects as two black males, twenty-five to thirty years of age, approximately 5′ 9″ tall, dressed in dark clothing, and wearing white tennis shoes. According to the radio report, the suspects were armed with a pistol, a sawed-off shotgun, and a .38 caliber revolver taken from one of the robbery victims.

At approximately 1:38 a.m., the Aurora police were notified of a second armed robbery at 1245 Emporia Street, two and one-half blocks from the first robbery. In the second criminal episode, one person was killed and another wounded. The suspects were again described in the police report as two black males.

At 1:46 a.m., Lieutenant Sloan entered the vicinity. While driving into the area where the crimes were committed, he observed only two other vehicles, each occupied by a single white male. After arriving at the crime scene, he saw a vehicle occupied by two black males in their twenties, wearing dark clothing. He followed their vehicle for several blocks without seeing any other vehicles. Sloan and Officer Huffman used their public address system and directed the vehicle to stop. The officers then called for backup assistance, a spotlight was put on the car, and the occupants were ordered to get out with their hands up. Guffie, the driver of the vehicle, got out and Lieutenant Sloan made a weapons search, requested identification, and asked for an explanation of his presence in the area. The responses to the questions were inconsistent and suspicious.

Upon the arrival of backup officers, the defendant, Charles Weeams, was ordered to get out of the vehicle, frisked for weapons, and handcuffed. Officer Huffman then checked the vehicle for further suspects and observed a sawed-off shotgun and a pistol in plain view on the back seat of the vehicle. The defendant was taken back to the patrol car and asked for identification. He replied that he had none. Officer Huffman inquired about a wallet in Weeams' back pocket. Weeams said that it did not belong to him. Officer Huffman removed the wallet and found a driver's license belonging to Nathan Nigon, a white male who was a victim of the second robbery.

Weeams and Guffie were then placed under arrest, informed of their *Miranda* rights, and taken to the Aurora jail for further questioning. During the interrogation of the suspects at the jail, Weeams waived his right to have counsel present and confessed to both crimes. While his confession was being taped, a public defender asked to see Weeams but his request was denied.

The defendant filed motions to suppress both the evidence seized at the scene of the arrest and the taped confession obtained during the interrogation. The trial court granted the defendant's motions on the ground that the evidence seized at the scene was the product of an arrest which was not supported by probable cause. The taped confession was also suppressed on the ground that it was the product of a denial

of the defendant's right to counsel under section 16–3–402(3)(a), C.R.S.1973 (1978 Repl.Vol. 8 and 1982 Supp.).

Although the trial court recognized that the officers had a reasonable and articulable suspicion which justified the investigatory stop, the court concluded that Officer Huffman exceeded the permissible scope of the stop when he handcuffed the defendant. Accordingly, the court declared that an arrest occurred before the police had probable cause. In our view, the trial court erred in ruling that Huffman's actions at the time of the investigatory stop constituted an arrest.

## II.

An investigatory stop is proper when (1) the officers conducting the stop have a reasonable suspicion that the individual has committed a crime; (2) the purpose of the detention is reasonable; and (3) the scope and character of the intrusion are reasonably related to its purpose. *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971). The question presented here is whether Officers Sloan and Huffman conducted the investigatory stop in a manner reasonably related to its purpose.

Officers conducting an investigatory stop may use that amount of force which is reasonably related in scope and character to ensuring their safety during the period of detention. *People v. Lewis*, 659 P.2d 676 (Colo.1983). Although the precautionary measures taken in a particular case may lead a detainee to believe that he is not free to leave, this does not necessarily transform a stop into an arrest. *People v. Lewis, supra; People v. Tate*, 657 P.2d 955 (Colo.1983).

The critical inquiry is whether the officers' actions were reasonable under the circumstances. *People v. Sherman*, 197 Colo. 442, 593 P.2d 971 (1979). As the court stated in *United States v. Merritt*, 695 F.2d 1263, 1274 (10th Cir.1982):

"We should not ask whether the force used was so great as to render it an arrest but, instead, whether the force used was reasonable. Whenever the police confront an individual reasonably believed to present a serious and imminent danger to the safety of the police and public, they are justified in taking reasonable steps to reduce the risk that anyone will get hurt. They should not be constrained in their effort to reduce the risk of injury or death simply because the facts known to them create a reasonable suspicion, but do not rise to the level of probable cause."

The factual background in this case is more egregious than *People v. Tooker*, 198 Colo. 496, 601 P.2d 1388 (1979). In *Tooker*, we refused to approve an extended intrusion pursuant to an investigatory stop since no actual crime had been reported and no weapons were used or observed. However, in *People v. Johnson*, 199 Colo. 68, 605 P.2d 46 (1980), we upheld the detention of suspects under circumstances which are similar to those confronting the police in this case. In *Johnson*, a robbery had been reported, the occupants of the vehicle matched the description of the robbers, the time was 3:00 a.m., and the suspect vehicle was the only one in the area. Here, the report of the robbery and a description of the suspects, coupled with the presence of the vehicle occupied by individuals matching the description of those involved in the robbery in the area where few other vehicles were seen, parallels the factual basis of the stop in *Johnson*.

The extended intrusion under the narrow circumstances of this case, as in *Johnson*, is justifiable due to the fact that two armed robberies had just occurred in a residential neighborhood, with the second robbery resulting in the death of one victim and serious injury to another. The suspects stopped by the police were reportedly armed with a sawed-off shotgun and other weapons, and the stop took place late at night in a deserted area. When weighed against the exigencies of the situation confronting the officers, it was not unreasonable to handcuff the defendant to ensure the safety of the officers. *See People v. Gurule*, 175 Colo. 512, 488 P.2d 889 (1971)

(upholding the detention of a suspect although probable cause for arrest had not been established).

Finally, we note that the court in *United States v. Bautista*, 684 F.2d 1286 (9th Cir. 1982), upheld the use of handcuffs under narrow circumstances similar to the case at hand which reasonably justified their use. The officer in *Bautista* justified the use of handcuffs by his fear of a possible assault. In this case, it was not unreasonable for the officer who took Weeams back to the car to look for other suspects to take adequate protective measures knowing that the weapons which were used in the robbery might be within Weeams' reach when they were near the car. *See also United States v. Thompson*, 597 F.2d 187 (9th Cir.1979); *Arizona v. Aguirre*, 130 Ariz.App. 54, 633 P.2d 1047 (1981) (upholding the use of handcuffs on a defendant who repeatedly defied orders to keep his hands away from his pockets).

Under the narrow circumstances surrounding an apprehension of criminal suspects reasonably believed to be armed, the use of handcuffs may be a reasonably justified intrusion. The police officer here merely eliminated the possibility that he would be the victim of an assault with the deadly weapons which were used in the robberies and thought to be inside the automobile. *Cf. United States v. Bautista, supra.*

### III.

■ The defendant asserts that the district court erred in determining that the police had an articulable and reasonable suspicion to support their investigatory stop. Since our decision is based on the third prong of the requirements for a *Stone* stop, we will not address the district court's finding that there was an articulable and reasonable suspicion to support the stop. That matter was resolved against the defendant who is not entitled to interlocutory review under C.A.R. 4.1. The issue before us is whether the scope and character of the intrusion reasonably related to its purpose.

■ In *People v. Tate, supra*, this court recognized that knowledge obtained during a lawful investigatory stop, when combined with previously obtained information, may be sufficient to establish probable cause for arrest. The trial judge concluded that Officers Sloan and Huffman had a reasonable and articulable suspicion to justify an investigatory stop. Without reviewing the district court's finding relating to an articulable and reasonable suspicion, we conclude that the observation of the weapons in the car in plain view during the investigatory stop, when combined with other facts which the police relied upon, constituted probable cause to arrest the defendant. *People v. Waits*, 196 Colo. 35, 580 P.2d 391 (1978) (overruled on other grounds, *People v. Thomas*, 660 P.2d 1272 (Colo.1983)). Accordingly, the search which yielded the robbery victim's wallet, the sawed-off shotgun, and the handguns was a proper incident of the investigatory stop and properly support a finding of probable cause to arrest. *See Arizona v. Aguirre, supra.*

### IV.

■ The trial court's suppression of the taped confession was based upon an alleged violation of section 16–3–402(3)(a), C.R.S. 1973 (1978 Repl.Vol. 8 and 1982 Supp.), and not upon the violation of the defendant's constitutional rights under the Fourth, Fifth or Sixth Amendments to the United States Constitutions. Accordingly, the suppression order is not subject to review under C.A.R. 4.1. *People v. Lindsey*, 660 P.2d 502 (Colo.1983); *People v. Fish*, 660 P.2d 505 (Colo.1983).

We reverse the trial court's order suppressing the evidence seized at the scene of the investigatory stop and do not address the suppression of the defendant's confession.