**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellant,**

v.

**Kenneth R. COBBIN,**
**Defendant-Appellee.**

**No. 84SA251.**

Supreme Court of Colorado,
En Banc.

Dec. 17, 1984.

Norman S. Early, Jr., Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

Terri L. Brake, Law Offices of Larry S. Pozner, P.C., Denver, for defendant-appellee.

DUBOFSKY, Justice.

In this interlocutory appeal under C.A.R. 4.1, the People challenge a Denver District Court ruling suppressing evidence seized from the defendant and identification of the defendant on the ground that both were obtained as part of an investigatory stop, the character of which was unreasonable. We affirm the order of the district court.

About 2:50 p.m. on September 2, 1983, police officers Relf and Ginsberg, on foot patrol at the corner of 21st and Larimer Streets in Denver, observed an elderly Hispanic man, recognized by one of the officers as a neighborhood businessman, chasing a young black man. Officer Relf pursued the young man on foot while Officer Ginsberg broadcast a description of the young man over a handheld police radio. Officer Ginsberg related that the person being chased possibly was involved in a robbery. A third officer, Officer Gutierrez, heard the description and call for assistance on his patrol car radio. He sighted a man answering the description broadcast by Officer Ginsberg near 23rd and Larimer Streets. Officer Gutierrez stopped the suspect, the defendant Kenneth R. Cobbin. Because Gutierrez was under the misimpression that Officer Ginsberg knew this man had been involved in an armed robbery, he drew his service revolver and handcuffed and patted down the defendant. In the patdown search, Officer Gutierrez discovered a wad of money in one of the defendant's pockets. He returned the money to the pocket after determining that the suspect did not have a weapon.

After Officer Gutierrez completed his patdown search, another patrol car and Officers Relf and Ginsberg on foot arrived at the scene. Officer Relf identified the defendant as the man he had been chasing. Officer Gutierrez removed his handcuffs from the defendant and another officer handcuffed the defendant with another set of handcuffs. Officer Relf placed him leaning over the hood of one of the patrol cars. Either Officer Relf or Ginsberg conducted another patdown search and confiscated the contents of the defendant's pock-

ets.[1] Officer Relf asked the defendant his name, but none of the officers asked the defendant why he had been running at 21st and Larimer. The defendant was placed in the patrol car of another policeman, Officer Duncan, and returned to the area of 21st and Larimer. David Salas, the owner of a barbershop at 2105 Larimer, identified the defendant as the man he had been chasing down the street a few minutes earlier. He told the officers that he had caught the suspect stealing money from the barbershop's cash register and chased him out the door and down the street. The officers then told the defendant he was under arrest and gave him his *Miranda* warnings.

The defendant was charged with robbery of the elderly under section 18-4-304, 8 C.R.S. (1984 Supp.), a class three felony, and third degree burglary under section 18-4-204, 8 C.R.S. (1984 Supp.), a class five felony. The defendant pled not guilty, and, acting *pro se*, moved to suppress evidence obtained as a result of the stop. After a suppression hearing, the district court found that, at the time they chased and stopped the defendant, the officers had no knowledge that any crime had been committed. Therefore, the court held that there was no probable cause to arrest the defendant at 23rd and Larimer, but that the information available to the officers justified an investigatory stop. Further, the court determined that the officers properly searched the defendant for weapons, but that because the defendant was found to be unarmed and was in the presence of five or six police officers, it was unreasonable to handcuff the defendant, place him over the hood of the car, and return him, handcuffed, for an identification by Salas before anyone discovered why Salas was chasing the defendant. The district court concluded that the character of this detention was not reasonable in light of its purpose and suppressed the money seized from the defendant and the officers' and Salas' identification of the defendant.

The People have not appealed the district court ruling that the officers lacked probable cause to arrest the defendant when he was chased and stopped near 23rd and Larimer. Instead, the People assert on appeal that the search, handcuffing and transportation of the defendant to 21st and Larimer Streets were reasonable actions taken for the police officers' safety and to investigate the incident.

## I.

■ We conclude that the character and scope of the detention of the defendant in this case was not reasonable when considered in light of the knowledge then held by the police officers and the purpose of the stop. The constitutional basis for an investigatory stop upon less than probable cause for arrest was first established in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Supreme Court held in that case that constitutional rights under the fourth and fourteenth amendments are implicated when the police conduct even very limited searches and detention of suspects. Holding that limited stops and searches could be conducted without probable cause, the Court cautioned that the scope of such intrusions must be strictly limited by their purpose. 392 U.S. at 19, 25-26, 88 S.Ct. at 1878, 1882-1883. Here the scope of the intrusion was not so limited.

The requirements of a valid investigatory stop (a *Stone* stop) were set out by this court in *People v. Thomas*, 660 P.2d 1272 (Colo.1983):

> Three conditions must exist before a person may be subjected to an investigatory stop: (1) there must be a specific and articulable basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the stop must be reasonable; and (3) the scope and character

---

**1.** Officer Relf testified that he patted the defendant down, removed the money, folded in half, from the defendant's pocket, and laid it on the hood of the patrol car. Officer Ginsberg testified that *he* removed a wad of money from the defendant's pocket and placed it in his own pocket.

of the stop must be reasonably related to its purpose.

*Id.* at 1274 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Tate*, 657 P.2d 955 (Colo.1983); *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971)). *See also People v. Perez*, 690 P.2d 853 (Colo.1984); *People v. Cagle*, 688 P.2d 718 (Colo.1984); *People v. Villiard*, 679 P.2d 593 (Colo.1984); *People v. Wells*, 676 P.2d 698 (Colo.1984); *People v. Lewis*, 659 P.2d 676 (Colo.1983); *People v. Tooker*, 198 Colo. 496, 601 P.2d 1388 (1979).

In this case, the mere fact that the suspect was running away from an older man did not furnish the officers with probable cause to arrest the defendant. This was the only knowledge possessed by any of the officers until the defendant was returned to the barbershop at 21st and Larimer. In a high crime area like 21st and Larimer, however, such knowledge may furnish a reasonable suspicion that criminal activity has occurred, sufficient to justify a limited investigatory detention.[2] Therefore, as the district court held, the stop met the first requirement of *Stone.*

■ In *People v. Cagle* we discussed, under the second requirement of *Stone,* the inquiry that a court must make about the officer's actual purpose at the time of the stop and search. Although the officers' testimony at the suppression hearing did not extend to their purpose in stopping the defendant, they did state that they had no intent to arrest him until after the identification by Salas. Officers Relf and Ginsberg testified that the purpose of the pat-down search and handcuffing the defendant was to protect the police officers.[3] The purpose of the stop and detention implicitly appearing throughout the record is the reasonable one of discovering whether the defendant was involved in a crime.

■ This brings us to the third inquiry under *Stone:* whether the scope and character of the stop were reasonably related to its purpose. When a suspect is stopped for the limited purpose of discovering whether he was involved in criminal activity, intrusion by police officers on the suspect's rights must be similarly limited. "Any temporary police detention made for the purpose of questioning a suspect who might otherwise escape is limited to determining an individual's identity or obtaining an explanation of his behavior." *People v. Schreyer*, 640 P.2d 1147, 1150 (Colo.1982); *People v. Hazelhurst*, 662 P.2d 1081, 1086 (Colo.1983). The limited weapons search here was justified by the reasoning of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *People v. Tate*, 657 P.2d 955. However, once it was ascertained that the defendant was not armed, the officers exceeded the proper scope of their search by again searching the defendant's pockets and confiscating the contents.[4] In addition, the police officers testified at the suppression hearing that they made no attempt to elicit an explanation of the defendant's activities from him,[5] *see Schreyer*, 640 P.2d at 1150, or from anyone else. Instead, they confiscated his possessions, handcuffed him and placed him in a police vehicle, returning him to the place

---

2. As Officer Ginsberg testified, "it's very unusual to see an elderly Spanish male with his shirt open, chasing a Black male, and the Black male running, looking back cause he's running. I could tell they weren't out jogging or something."

3. Relf also testified that he bent the defendant over the hood of the patrol car "to disable him from running." This was a reasonable purpose in light of the fact that the officers were justified in stopping the defendant, although the character of Relf's action may have been excessively intrusive in light of the fact that Officer Relf had no knowledge that the defendant had tried to run away once he was stopped.

4. Both Relf and Ginsberg testified that it was standard procedure to handcuff and search anyone *suspected* of criminal activity. Relf testified that "you empty the suspect's pockets and keep everything in your control." We do not condone such a procedure when someone has been stopped on mere suspicion, without probable cause to arrest.

5. A person detained under these circumstances, of course, is under no obligation to answer such inquiries. *See Berkemer v. McCarty*, —— U.S. ——, 104 S.Ct. 3138, 3150–51, 82 L.Ed.2d 317 (1984).

where the chase started. These actions were a greater intrusion on the defendant's person than necessary to detain him and inquire about his activities. *See People v. Schreyer*, 640 P.2d at 1150.[6]

We therefore affirm the district court's ruling suppressing the evidence seized during the investigatory stop.

## II.

■ The People's brief also addresses the district court's holding suppressing the eyewitness identification made by Salas at the showup in front of his barbershop. This ruling cannot be the subject of an interlocutory appeal under C.A.R. 4.1. Rule 4.1 may be used only to appeal from pre-trial suppression hearings required by Crim.P. 41(e) and 41(g). *People v. McNulty*, 173 Colo. 491, 480 P.2d 560 (1971); *People v. Thornburg*, 173 Colo. 230, 477 P.2d 372 (1970). These hearings should address only the potential suppression of physical evidence or confessions unlawfully obtained from defendants. *McNulty*, 173 Colo. at 493, 480 P.2d at 561. Interlocutory appeals may not be extended to review other evidentiary decisions made prior to trial. *People v. Lindsey*, 660 P.2d 502 (Colo.1983). We therefore decline to review the district court's other evidentiary rulings and do not reach the issues of whether the showup identification was improperly suggestive or a product of the illegal detention of the defendant.

The order of the district court is affirmed.

ROVIRA, J., dissents.

6. The People rely on the case of *People v. Weeams*, 665 P.2d 619 (Colo.1983) to justify the use of handcuffs in apprehending the defendant. In *Weeams*, we upheld the use of handcuffs "[u]nder the narrow circumstances surrounding an apprehension of criminal suspects reasonably believed to be armed ...." 665 P.2d at 623. *Weeams* involved two reported armed robberies in which two victims were shot. There, the police officers had reasonable concern that the suspects were armed or had con-

ROVIRA, Justice, dissenting:

The opinion of the court in this case is a classic example of the exclusionary rule being applied without there being a sound basis for its application. The court in its analysis seems to forget, or perhaps ignores, that the exclusionary rule's primary purpose is to deter police misconduct. *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Keeping in mind that primary purpose, I believe that when it is applied to the facts of this case no showing of misconduct can be demonstrated.

What we have in this case is an example of a quick and lawful response by the police to an emergency. The majority opinion recognizes that there was a sound basis in fact to suspect that a crime had occurred and that the purpose of the stop was reasonable. However, it then determines that the scope and character of the stop was unreasonable as a result of the police confiscating the defendant's possessions, handcuffing him, and returning him to the place where the chase started.

I agree with that part of the court's opinion which finds that the police had a reasonable suspicion that a crime had occurred and the purpose of the stop was reasonable. I disagree with the conclusion that the scope and character of the stop was unreasonable because it was a "greater intrusion on the defendant's person than necessary to detain him and inquire about his activities." At 1072–1073.

Initially, the court condemns the police for confiscating the defendant's possessions. The "possessions" referred to is the wad of money found in the defendant's pocket which, a few minutes after the defendant was stopped, was identified by the

cealed weapons inside their automobile, and the handcuffs were necessary to ensure the officers' protection while they searched the automobile. This case differs significantly from *Weeams;* the defendant was on foot and already had been searched for weapons. The officers had no knowledge that any crime had occurred, much less a crime involving violence. In such a situation, the officers' handcuffing the defendant was not justified.

victim, Mr. Salas, as the money taken from the cash register in his barbershop.

The second ground for finding inappropriate police conduct was that the police handcuffed the defendant even after he was frisked, and no weapons were found. Officers Relf and Gutierrez testified concerning their reasons for putting handcuffs on the defendant and placing him over the hood of the police car. Relf stated that when suspects are placed in a police vehicle it is normal procedure to handcuff them because of past incidents where officers "were attacked or their weapons were taken from them ...." In explaining why he placed the defendant over the hood of the car, Relf testified that after catching up with the defendant he was "getting tired and didn't feel like another foot chase, so I placed him across the hood of the car to disable him from running." Gutierrez testified that he handcuffed the defendant because, "I didn't want this party from past experiences, breaking from us and running again."

The majority opinion also finds fault with the police returning the defendant to Mr. Salas' barbershop, the place where the chase started. Since witness identification at the scene of the crime is permissible in situations where immediate identification would permit either the release of the suspect or establish probable cause for arrest, *People v. Mascarenas*, 666 P.2d 101 (Colo. 1983), I believe that taking the defendant back to where the chase started was reasonably related to the stop. While the act of returning the defendant could, from the defendant's perspective, be characterized as a "greater intrusion on the defendant's person than necessary," I do not believe that it is an appropriate or correct characterization under the facts of this case.

The standard which I believe appropriate to apply is whether the police acted reasonably under the totality of the circumstances. My review of the record leads me to conclude that the police took reasonable steps to ensure their own safety and to prevent the defendant from escaping. Their acts were reasonable and did not constitute misconduct such as to mandate invoking the exclusionary rule. I would reverse the ruling of the trial court and allow the police officers to testify at trial and also allow the introduction of the evidence seized from the defendant.