The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Roland Charles LAGRUTTA, Defendant–Appellee.

No. 89SA26.

Supreme Court of Colorado, En Banc.

June 26, 1989.

G.F. Sandstrom, Dist. Atty., Richard W. Dickerson, Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Victor I. Reyes, Deputy State Public Defender, Denver, for defendant-appellee.

ROVIRA, Justice.

In this interlocutory appeal, brought pursuant to C.A.R. 4.1, the People challenge an order suppressing drugs seized from and statements made by the defendant. We reverse the suppression order.

### I.

The defendant, Roland Charles Lagrutta, was charged with several counts of possession with intent to distribute and possession of a schedule IV controlled substance. The defendant filed a motion to suppress all evidence seized from his person and his automobile and statements made by him during and after his detention and arrest. The evidence presented at the suppression hearing established the following sequence of events.

On June 27, 1988, at approximately 1:00 p.m., Officer James C. Ruggieri of the Pueblo Police Department Narcotics and Intelligence Unit met with an informant identified as James Young. Although Young had not previously supplied information to him, Ruggieri was aware that Young had provided reliable information to another police officer on several occasions.

Young told Ruggieri that a slender, blue-eyed, white male in his forties with graying hair and beard was selling drugs from a Dodge van parked at 909 West 11th Street, Apartment No. 2, in Pueblo, Colorado. Ruggieri took Young to that address to investigate. While Ruggieri remained in his unmarked police car, which was parked about 150 feet from the residence, Young entered the apartment and came out with a man who matched the description that Young had previously given. The two men went to the Dodge van where the suspect gave Young two blue pills from a metal container which he kept in his right front pants pocket and two pills wrapped in aluminum foil from a vitamin bottle with a "B" on the side. Young told Ruggieri that the vitamin bottle was in a brown paper sack located between the front seats of the van. The word "Pacidrim" was printed on the aluminum foil. Ruggieri later had one of the blue pills tested by the Colorado Bureau of Investigation and was told that it contained nitrazepam, a schedule IV controlled substance.

Later that day, Ruggieri, along with Officer Richard Lancendorfer, gave Young a $5 bill, the serial number of which had been recorded, and instructed him to purchase additional pills from the suspect. Ruggieri again drove Young to 909 West 11th Street, and Lancendorfer followed in an undercover police car. On arrival, Young went into Apartment No. 2, and shortly thereafter, he and the suspect entered the Dodge van. Again the defendant gave Young a pill wrapped in aluminum foil. After paying for the pill with the $5 bill and receiving two $1 bills in change, the

informant rejoined Ruggieri, and they drove away.

Shortly thereafter, Lancendorfer, who had remained at the scene, contacted Ruggieri by radio and told him that the Dodge van was leaving. Although Lancendorfer followed the van, he provided no information to Ruggieri as to the identity of the driver. Ruggieri dropped Young off and set out to find the van. He located the van on West 8th Street and turned on his emergency equipment to stop the vehicle. While in the process of stopping the van, he saw the driver's face in the outside rear view mirror and identified the driver as a man with a beard. Ruggieri testified that the driver's face matched the informant's description of the person who sold the drugs. On approaching the driver's side of the vehicle, Ruggieri asked the defendant to get out of the van. As he and the defendant walked to the passenger side of the van to avoid the traffic, Ruggieri looked in the front passenger window and saw a brown paper sack on the floor between the front seats of the van.

While conducting a pat down search, Ruggieri discovered a small metal container in the defendant's right front pants pocket. On examining the contents of the container, he found four white phenobarbital pills and twelve blue nitrazepam pills. He also found the $5 bill that he had given to the informant. Ruggieri testified that he then placed the defendant under arrest and orally advised him of his *Miranda* rights. He was then taken to the police station where he was advised in writing of his *Miranda* rights. When questioned, the defendant made certain statements concerning the pills in the metal container and the paper sack.

After the defendant was arrested, Lancendorfer drove the Dodge van to the police station where he performed an inventory search and found the brown paper sack in which was located a bottle with a "B" on the side. The bottle contained six empty aluminum foil wrappings with the word "Pacidrim" printed on them. He also discovered assorted drug paraphernalia and marijuana.

At the hearing on the defendant's motion to suppress, Ruggieri testified that, while he could see the man with whom Young was dealing, he was too far away to positively identify the defendant as the man he had seen with the informant. He also stated that once he started to follow the Dodge van, he intended to stop it, regardless of who was driving, in order to identify the driver. Further, he testified that after he stopped the defendant, noted that he matched the description given by the informant, and saw the brown paper bag in the van, the defendant was not free to leave.

In granting the defendant's motion to suppress, the district court considered the requirements for a valid investigatory stop followed in *People v. Cobbin*, 692 P.2d 1069 (Colo.1984):

(1) there must be a specific and articulable basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the stop must be reasonable; and (3) the scope and character of the stop must be reasonably related to its purpose.

*Id.* at 1071–72 (quoting *People v. Thomas*, 660 P.2d 1272 (Colo.1983)). The court held that the evidence satisfied the first requirement. With regard to the second and third requirements, however, the court was of the opinion that the evidence was insufficient. The court reasoned that

[a]s to his purpose in stopping the van, Officer Ruggieri testified that 'I am going to stop the van no matter what'. Further, he testified that at no time after he observed the Defendant in the rear view mirror was Defendant free to leave, rather clearly indicating his intention to immediately arrest the Defendant. The Court finds that the officer's act in stopping the van cannot be considered as a proper investigatory stop, in view of the officer's stated intention at the time the van was stopped and the almost immediate arrest of the Defendant. Defendant's Motion to Suppress Evidence and Statements should be granted.

In challenging the suppression order, the People claim that the information possessed by Ruggieri was sufficient to justify

an investigatory stop to determine the identity of the driver. The People also assert that once it was determined that the operator of the van matched the description of the man who had sold drugs to the informant, the officer had sufficient information to establish probable cause to believe that a crime had been committed and that the defendant committed the crime. Therefore, according to the People, the statements made by the defendant and the property seized from the defendant and his van should not be suppressed.

## II.

■ An investigatory stop is a limited form of intrusion that may be justified with less than probable cause without violating the fourth amendment of the United States Constitution, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and article II, section 7 of the Colorado Constitution, *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971). As we stated in *Stone*, "when an officer reasonably suspects that the person has committed a crime or is about to commit a crime and the officer has not identified the person he legally may stop him to question him about his identity." 174 Colo. at 509, 485 P.2d at 497.

■ To justify the limited intrusion of an investigatory stop, a police officer must have an articulable and specific basis in fact for suspecting that criminal activity has occurred or is about to take place, the purpose of the intrusion must be reasonable, and the scope and character of the intrusion must be reasonably related to its purpose. *People v. Wells*, 676 P.2d 698, 701 (Colo.1984). The reasonable suspicion to support an investigatory stop may be based on information supplied by an informant's tip as well as the personal observations of police officers. *People v. Lucero*, 182 Colo. 39, 511 P.2d 468 (1973).

### A.

■ The first requirement for an investigatory stop is that the police officer have an articulable and specific basis in fact for suspecting that criminal activity has occurred or is about to take place. The trial court was of the opinion that this requirement was satisfied. We agree.

In *People v. Lucero*, 182 Colo. 39, 511 P.2d 468 (1973), we addressed the question of whether an investigatory stop was justified under facts similar to those in this case. In *Lucero*, an unidentified person who was at the scene of an attempted robbery gave the police a description of the getaway vehicle, and the victim of the attempted robbery gave the police a description of the robber. The description of the robber and the getaway vehicle were then broadcast over the police radio. Shortly after the broadcast, a police officer, who was traveling in his patrol car in the general vicinity of the crime when he heard the descriptions, observed a vehicle that matched the description he heard over the radio. The officer stopped the vehicle to investigate, and while approaching the vehicle, he observed its occupants and noticed that one of them matched the description of the suspect broadcast over the radio.

This court was asked to determine whether the description of the getaway vehicle supplied by unidentified persons at the crime scene provided a constitutionally sufficient basis for the officer to make an investigatory stop of the vehicle. The court concluded that there was reasonable cause to stop the described car for investigatory purposes.

We believe the facts of this case provide even stronger grounds for the stop because Ruggieri was able to rely on his personal observations of the van instead of a description of the vehicle given by unidentified persons. Therefore, we agree with the trial court's conclusion that the first requirement for an investigatory stop was satisfied.

### B.

The second requirement for a valid investigatory stop is that the purpose of the intrusion must be reasonable. The trial court believed that the purpose of the stop was not reasonable because the police officer intended to arrest the driver after he determined that the driver matched the de-

scription given to him by the informant. Because the officer's subjective intent is not relevant and because we believe that there was a valid purpose for the stop, we disagree with the trial court's conclusion.

"The officer's subjective intent is not critical to determining whether there was a legitimate purpose for the intrusion." *People v. Hughes*, 767 P.2d 1201, 1205 (Colo. 1989) (citing *People v. Tate*, 657 P.2d 955, 959-60 (Colo.1983) (Lohr J., concurring)). In *Tate*, a police officer was dispatched to investigate a report by a security guard that two persons were tampering with vending machines near a municipal golf course clubhouse. As the officer drove into the parking lot, he was advised that the persons were running toward a nearby cemetery, and moments later he was advised that one of the suspects was apprehended at a garage near the clubhouse. When the officer went to that location, he observed a security guard sitting on top of the defendant. The guard stated, "I've got this one. The other went towards the ball park." The officer conducted a pat down search of the defendant, handcuffed him, and advised him that he was under arrest for "investigation of burglary."

This court determined that the officer's subjective intent was not critical, stating:

Whether the officer intended to only "detain" the defendant for further investigation or intended to "arrest" him is not critical to our resolution of this matter. These labels are merely a shorthand way of describing different degrees of intrusion on personal security and privacy. The critical inquiry is whether the intru-

sion, regardless of label, was justified under the totality of circumstances.

*Tate*, 657 P.2d at 957 n. 3 (citing *People v. Mathis*, 189 Colo. 534, 542 P.2d 1296 (1975); *People v. Severson*, 39 Colo.App. 95, 561 P.2d 373 (1977); 2 W. LaFave, *Search and Seizure* § 5.1 (1978)).

■ Justice Lohr specially concurred to the majority opinion because his reading of the record led him to the conclusion that the police officer's subjective purpose was broader than that attributed by the majority opinion. He reached the same result, however, because he agreed with the majority's conclusion that an officer's subjective intent is not critical. The basis for his conclusion was *People v. Mathis*, 189 Colo. 534, 542 P.2d 1296 (1975). According to Justice Lohr,

[*Mathis*] must be read to mean that if there is an articulable and specific basis for suspecting that criminal activity has or is about to take place, and there is a *legitimate* purpose for the intrusion, and the scope and character of the intrusion are reasonably related to that purpose, the intrusion is constitutionally permissible even if the officer's subjective purpose is to effect an intrusion more extensive than legally justified.

*Tate*, 657 P.2d at 960 (Colo.1983) (Lohr, J., specially concurring).[1]

■ Here, there was, in fact, a legitimate purpose for stopping the van, namely, to identify the driver to determine whether he was the man who had sold drugs to the informant. The purpose of

---

1. In *People v. Cagle*, 688 P.2d 718 (Colo.1984), with respect to a search incident to an investigatory stop, we stated:

The second condition [for a valid investigatory stop] requires a two-fold inquiry: the court must first determine the officer's actual purpose in making the search, and then determine whether this purpose was reasonable. Where an officer conducts an investigatory stop, an accompanying search upon less than probable cause is permissible solely for the purpose of discovering weapons. The officer must in fact entertain this purpose *at the time of the search;* the delicate balance that the rule of *Terry* strikes between the officer's protection and the suspect's privacy would be

skewed if an officer were permitted to search for evidence and rationalize it only after the fact as a search for weapons.

*Id.* at 722 (citations omitted). It is true that a pat down search during an investigatory stop must be for the purpose of discovering weapons. *See Terry v. Ohio*, 392 U.S. 1, 30–31, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968). However, with regard to the detention of a person during an investigatory stop, when a police officer intends a more extensive intrusion than is warranted by the circumstances, the detention is not invalid as long as the actual intrusion does not exceed what is reasonable. Therefore, our conclusion here does not conflict with *Cagle*.

the stop is the reasonable one of discovering whether the suspect was involved in a crime. *See People v. Cobbin,* 692 P.2d 1069, 1072 (Colo.1984).

## C.

■ The final requirement for a valid investigatory stop is that the scope and character of the intrusion must be reasonably related to its purpose. We believe that this requirement was satisfied.

Here, once Ruggieri stopped the van, he saw the defendant's face in the rear view mirror. At that point, he knew that the driver of the van matched the description of the person who had sold controlled substances to the informant earlier that day. As he and the defendant walked around the front of the van to avoid the traffic, Ruggieri saw the brown paper sack on the floor of the van which the informant had described as containing controlled substances. Ruggieri then conducted a pat down search of the defendant. During the pat down, Ruggieri felt the metal container in the defendant's right front pants pocket which the informant had described as containing the blue pills which he purchased from the defendant. Up to this point, the scope and character of the intrusion had not exceeded what was necessary to identify whether the defendant was the person who had sold drugs to the informant earlier in the day.

■ After Ruggieri determined that the driver matched the description given by the informant, saw the brown paper bag that contained controlled substances in the place described by the informant, and felt the metal container that contained controlled substances in the defendant's right front pants pocket as described by the informant, at that point if not before, he had probable cause to arrest the defendant. "Probable cause to arrest exists when there are facts and circumstances sufficient to cause a per-son of reasonable caution to believe that at the time of the arrest an offense has been or is being committed by the person to be arrested." *People v. Rayford,* 725 P.2d 1142, 1146 (Colo.1986). Facts and circumstances observed during a valid investigatory stop can provide a sufficient basis for probable cause to arrest. *Cf. People v. Hughes,* 767 P.2d 1201, 1206 (Colo.1989) ("The discovery of contraband during a lawful frisk can provide probable cause for a more thorough search.").

■ Ruggieri then reached into the defendant's pocket and seized the metal container, which he immediately opened. In the container, Ruggieri found controlled substances as described by the informant. Because Ruggieri had probable cause to arrest the defendant, these actions were valid as a search incident to a lawful arrest.

[I]n the context of the Fourth Amendment the scope of a search incident to a *lawful custodial arrest* is quite broad. The search need not be limited to a mere pat-down of the arrestee's outer clothing, but may extend to pockets and other containers, opened or closed, found on the person of the arrestee or within his immediate reach. Such a search of the arrestee's person requires no independent justification, and the searching officer may seize and examine weapons, contraband, or other articles which the officer reasonably believes to be related to criminal activity even though these articles do not directly relate to the offense for which the arrest itself was effected.

*People v. Bischofberger,* 724 P.2d 660, 664–65 (Colo.1986) (footnote and citations omitted).[2]

We conclude that Officer Ruggieri performed a valid investigatory stop during which he observed facts and circumstances

---

**2.** Although Ruggieri testified that he seized and opened the metal container and then placed the defendant under arrest, he also testified that after he stopped the defendant, noted that the defendant matched the description given by the informant, and saw the brown paper bag in the van, the defendant was not free to leave. Based on our decision in *Tate,* 657 P.2d 955, and our holding in this case, the label used by the officer in describing the extent of the intrusion is not critical. Therefore, the fact that Ruggieri testified that he placed the defendant under arrest after opening the container does not affect our conclusion with regard to the search of the defendant incident to his arrest.

sufficient to provide probable cause to arrest. Thereafter, the seizure of evidence was valid as incident to a lawful arrest.

The trial court's order suppressing the defendant's statements and the evidence seized is vacated, and the case is remanded for further proceedings.