The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Johnny E. TRUJILLO, Defendant-Appellant.

No. 83CA0811.

Colorado Court of Appeals, Div. III.

July 25, 1985.

Rehearing Denied Aug. 22, 1985.

Certiorari Denied Dec. 2, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Eric Perryman, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Richard A. Hostetler, Deputy State Public Defender, Denver, for defendant-appellant.

BABCOCK, Judge.

Defendant, Johnny E. Trujillo, appeals from the judgment of conviction entered on jury verdicts finding him guilty of second degree burglary and theft. We affirm.

A.

The following facts are undisputed by the defense. On October 26, 1982, Juanita Rider reported that there had been a burglary of her home in a rural area of Prowers County between 10:00 and 12:00 a.m. A radio, television, McCullock chain saw, tape recorder, and single shot rifle were taken. A neighbor reported that at about 11:30 a.m. that day she saw an old green car with three Hispanic males in it driving slowly along the road toward the Rider house. She remembered that the license number on the green car had the letters WG and the numbers 5 and 7 in it.

At about 9:30 p.m. on the day of the burglary, the investigating officer saw a green 1972 Oldsmobile parked in Lamar, approximately three miles from the scene of the burglary, with the license number WG5427. The tires matched the tire tracks found at the scene of the burglary earlier that day. Two officers watched the Oldsmobile until three Hispanic males came out of a bar and got into the car. They followed the car and stopped it approximately a block away.

The driver produced a driver's license which identified him as Gilbert Valerio and a title showing him to be the owner of the car. Neither Chris Valerio, sitting in the right front seat, nor defendant, sitting in the back seat, were asked for identification or for an explanation of their actions.

The officers asked Gilbert Valerio if he would voluntarily come to the sheriff's office with them. He consented and drove the Oldsmobile to the office accompanied by Chris Valerio and defendant. Neither Chris Valerio nor defendant expressly consented to go to the sheriff's office.

When they arrived at the office at approximately 10:15 p.m., one officer took their names, addresses, and descriptions, while a second officer took first Gilbert Valerio and then defendant into a separate office and read them their *Miranda* rights. Meanwhile, the first officer took Chris Valerio to a second office and gave him his *Miranda* warning.

At about midnight, Mrs. Rider arrived at the sheriff's office and identified as hers a radio found in the trunk of the Oldsmobile. The neighbor also identified defendant as the person she saw in the backseat of the old green car. The officers then arrested the three men.

B.

Defendant first contends that his arrest was unlawful. The People concede that

defendant was seized but contend that his seizure was for the purpose of making a brief investigatory stop, requiring only that the intrusion meet the tests of reasonableness set forth in *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971).

Under *Stone*, an investigatory stop may be upheld as a reasonable seizure if the People establish that:

> "(1) the officer had a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the intrusion was reasonable; and (3) the character and scope of the intrusion was reasonable when considered in light of the purpose."

 The test to establish the first condition for a valid investigatory stop is "whether there were specific and articulable facts known to the officer, which taken together with rational inferences from those facts, created a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security." *People v. Thomas*, 660 P.2d 1272 (Colo. 1983). Only facts known immediately prior to the intrusion are properly considered in evaluating reasonableness of the officer's suspicion. *People v. Thomas, supra.*

 Among the factors to be considered in evaluating the reasonableness of an officer's suspicion is the particularity of the description of the offender or the vehicle in which he fled. *See People v. Mascarenas*, 666 P.2d 101 (Colo.1983). Here, the officers knew before the stop that a burglary had occurred earlier that day and that a witness had seen an old green car with three Hispanic males in it driving slowly along the road toward the victim's house during the period within which the burglary had occurred. The suspect vehicle and its occupant's matched the description of the car seen near the burglary location, and all four of the alpha numeric characters recalled by the neighbor were included in the license number of the suspect vehicle. Furthermore, the tires of the suspect vehicle appeared to match the tire tracks found in the victim's yard.

 We conclude that, under the totality of these circumstances, the officers had a reasonable suspicion supported by an articulable and specific basis in fact that the three suspects in the car had been involved in the burglary. Thus, they were justified in stopping the vehicle for investigatory purposes. *See People v. Savage*, 698 P.2d 1330 (Colo.1985); *People v. Bell*, 698 P.2d 269 (Colo.1985).

 The second requirement under *Stone* is that the purpose of the stop must be reasonable. The trial court found that the officers stopped the car for the purpose of investigating a burglary, and we agree that this constituted a proper purpose. *See People v. Tate*, 657 P.2d 955 (Colo.1983).

 As to whether the scope and character of the intrusion was reasonable when considered in light of its purpose, we conclude that the officers' actions constituted a greater intrusion on defendant's liberty than necessary to detain him briefly and inquire about his identity and actions. *See People v. Hazelhurst*, 662 P.2d 1081 (Colo. 1983); *People v. Schreyer*, 640 P.2d 1147 (Colo.1982). As a matter of law, under the undisputed facts of this case, defendant's seizure was of a character such that a reasonable person in the position of defendant would have believed that he was arrested rather than merely temporarily detained for a brief investigation. *See People v. Tottenhoff*, 691 P.2d 340 (Colo.1984).

 The trial court found that, during the stop, the officers asked the three people in the car if they would mind going to the sheriff's office to talk to them and that *all three people* consented. However, this finding must be set aside since there is no support in the record for it. *See People v. Johnson*, 653 P.2d 737 (Colo.1982). Since neither Chris Valerio nor defendant consented to accompany the officers to the sheriff's office, their detention for a period longer than necessary to determine their identity or an explanation of their behavior was unreasonable in light of the legitimate purpose of the stop. *See People v. Hazelhurst, supra.*

■ Whenever detention and questioning by a police officer are more than brief and cursory, there is an arrest which must be supported by probable cause. *People v. Schreyer, supra.* The People concede that there was no probable cause for arrest until the officers discovered the stolen radio in the trunk of Gilbert Valerio's car. Therefore, we hold that both Chris Valerio and defendant were illegally arrested. We assume, without deciding, that Gilbert Valerio was also illegally arrested and turn to defendant's argument that all evidence which flowed from his arrest must be suppressed.

### C.

Defendant makes three separate claims of error with regard to the admission of physical evidence. He first argues that all of the physical evidence seized during the search of the auto and defendant's home whould have been suppressed as the fruit of an illegal arrest. He next claims that the evidence seized during a search of the Oldsmobile should have been suppressed because there was no reasonable basis to believe that either Chris or Gilbert Valerio had authority to consent to a search of the car. Finally, he claims that the evidence seized from the home he shared with Chris and Gilbert Valerio should have been suppressed because there was no reasonable basis to believe that Chris Valerio had the authority to consent to the search of the house. The People argue that defendant does not have standing to challenge the seizure of the radio from Gilbert Valerio's car or the other items retrieved with Chris Valerio's cooperation.

■ Defendant has the burden of demonstrating that his own Fourth Amendment rights were violated. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *People v. Spies,* 200 Colo. 434, 615 P.2d 710 (1980). We conclude that he has not met his burden in this case.

Defendant's right to challenge evidence seized from the car or from the home rests on whether the arrests of Gilbert and Chris Valerio arose from his unlawful arrest and were directly dependent upon his arrest. *People v. Zamora,* 695 P.2d 292 (Colo. 1985).

■ Defendant's arrest was independent of the arrests of Gilbert and Chris Valerio. Defendant was a passenger in the automobile which the officers reasonably believed had been involved in a burglary. In view of the specific and articulable facts known to the officers, they would have stopped the car whether defendant was in it or not. Thus, both Chris and Gilbert Valerios' detention would have occurred regardless of defendant's illegal arrest, and therefore, the trial court properly refused to suppress the physical evidence derived from the Valerios' arrests.

### D.

■ Defendant claims the trial court erred when it refused to suppress a statement made by him November 1, 1982, while in custody. He contends that under *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the officer who permitted him to make a phone call and accompanied him to an office for that purpose should have known that his actions would be reasonably likely to elicit an incriminating response. We disagree.

At approximately 11:00 a.m. on November 1, defendant asked to make a phone call to a prospective employer. At about 2:30 p.m., a deputy took defendant from his cell to one of the offices to make the call. In the next office, through a window, defendant could see members of the Rider family recovering their property. After completing his phone call, defendant was taken into the hall to be returned to his cell where he passed the Rider family. Defendant asked the deputy if "those were the people that they had stolen the things from." The deputy answered, "yes," and defendant responded, "If I get that job, I am going to pay them back."

Defendant's behavior in spontaneously asking the officer if the people he saw in the office were his victims was not so predictable or foreseeable that the officer

should have known that allowing him to see his victims would evoke an incriminating response, and thus, was not in response to the functional equivalent of interrogation. *See Rhode Island v. Innis, supra.* Moreover, there is nothing in the record to indicate that the officer deliberately timed the phone call so that it would coincide with the presence of the victims at the sheriff's office. Thus, the trial court correctly refused to suppress defendant's statements. *See People v. Kelderman,* 44 Colo.App. 487, 618 P.2d 723 (1980).

Defendant next asserts that his statements on November 1, 1982, were the product of an illegal arrest and should be suppressed under a fruit of the poisonous tree analysis. Again, we disagree.

Defendant's statement was properly received in evidence if it was "sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In this case defendant was arrested on October 26 and made the statement six days later. At the time of his arrest, he was read his *Miranda* warnings by an officer, and on October 28, he was advised of his rights by a judge at an advisement hearing. There is no indication from the record that the statement given was the product of any official misconduct.

The trial court found that defendant's statements were spontaneously and voluntarily made and were not the product of custodial interrogation. The trial court's findings are supported by the record and will not be disturbed on review. *People v. Fish,* 660 P.2d 505 (Colo.1983). Hence, the trial court did not err when it refused to suppress defendant's statements. *See Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *People v. Marioneaux,* 44 Colo.App. 213, 618 P.2d 678 (1980).

The judgment of the trial court is affirmed.

VAN CISE and TURSI, JJ., concur.