The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Kenneth R. MICKENS, Defendant-Appellant.

No. 85CA0254.

Colorado Court of Appeals, Div. III.

Nov. 20, 1986.

Rehearing Denied Dec. 18, 1986.

Certiorari Denied (Mickens) March 9, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cynthia D. Jones, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Public Defender, Philip R. Cockerille, Sp. Deputy Public Defender, Denver, for defendant-appellant.

METZGER, Judge.

Defendant, Kenneth R. Mickens, appeals from the judgments of conviction entered upon jury verdicts finding him guilty of first degree sexual assault, second degree kidnapping, aggravated robbery, and three habitual criminal counts. We affirm.

On December 30, 1983, at 2:30 a.m., Officer Martinez responded to a call from a tenant at an apartment house and contacted the victim of a sexual assault. She reported that a man had apprehended her in the underground parking lot and had taken her a few blocks away, where he sexually assaulted and robbed her. The victim described her assailant as a black male in his twenties, approximately six feet tall, weighing 160 pounds, wearing dark gloves, a shower cap, and a grey sweatshirt with a grey hood. The victim also stated that the man wielded a dark-handled knife with a 10 to 12–inch blade. The officer accompanied the victim to the parking area of the apartment house and noticed a white Buick, with its hood up, parked facing the wrong way in the middle of the street. The officer then took the victim to Denver General Hospital for treatment.

After a briefing by Officer Martinez, Detective Pace returned to the scene. Once there, he noticed the white Buick. Using a flashlight to look into the interior of the car, he saw a wallet lying on the floorboard. The car was unlocked so the detective searched the wallet, which contained three pieces of identification belonging to defendant. The description on the identification matched the general description of the assailant in the sexual assault. The detective impounded the car and told the security guard at the apartment house to call him if anyone inquired about the vehicle.

About 7:30 a.m. detective Pace and three uniformed officers responded to the security guard's call. They encountered the defendant, who was wearing dark gloves and had a crease across his forehead. Detective Pace told defendant that the Buick had been towed, and that they were investigating a crime. The detective stated that he was not arresting the defendant, but "would appreciate it if defendant would come down to headquarters and answer a few questions." Defendant readily agreed.

After arriving at the police station, defendant was placed in Detective Lebedoff's office. After being advised of his *Miranda* rights, defendant agreed to talk. Defendant stated that he was not involved in the sexual assault, but would gladly cooperate because he wanted to help catch the assailant. Defendant said that he had gone to a party the previous night and had borrowed a car from a friend to get home. While driving home, the vehicle broke down near the apartment house, and defendant walked the remaining five blocks home.

The detectives asked if they could verify the defendant's story with his mother, with whom he was staying. Defendant assented. The detectives then told defendant that he was "free to leave, but they would appreciate it if he would remain" at the police station. The defendant agreed to do so and was placed in a locked holding cell at approximately 9:00 a.m.

Detective Lebedoff went to defendant's mother's home, where she invited him in. He told her that he was investigating a sexual assault, kidnapping, and robbery, and that her son was a suspect. The detective asked if her son owned a shower cap. The defendant's mother said, "Yeah, as a matter of fact, the one he wore yesterday

was in the bedroom here," and took the detective into the bedroom to show him. The shower cap was in plain view on the dresser. As they were returning to the living room, they passed through the kitchen, where the detective noticed a knife on the kitchen table matching the victim's description of the assailant's knife. Thereafter, the detective returned with a search warrant and seized the knife and shower cap.

Defendant moved to suppress all of his statements, and the wallet, knife, and shower cap. The trial court found that defendant was illegally arrested when he was placed in a locked holding cell at 9:00 a.m., and suppressed all statements made after that time. It refused to suppress defendant's statements made prior to 9:00 a.m., and the wallet, shower cap, and knife. At trial, the trial court ruled that the defendant's previously suppressed statements could be used for the limited purpose of impeachment if defendant elected to testify.

### I.

Defendant first asserts that, although the requirements of *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971) concerning an investigatory stop were met when the officers initially confronted him at the apartment house, their subsequent actions in taking him to police headquarters for questioning constituted an illegal arrest and, therefore, the trial court erred when it failed to suppress the statements he made between 8:15 and 8:45 a.m. We disagree.

A brief investigatory stop may be upheld absent probable cause if the People establish that:

"(1) The officer [had] a reasonable suspicion that the individual has committed, or is about to commit a crime; (2) the purpose of the detention [was] reasonable; and (3) the character and scope of the detention were reasonable when considered in light of the purpose."

*Stone v. People, supra.* We are concerned here with the third requirement of *Stone,* which permits only a limited seizure of a person that is brief in duration, limited in

scope, and narrow in purpose. *People v. Tottenhoff,* 691 P.2d 340 (Colo.1984).

The one-and-one-half hours between the time defendant was initially contacted and the time he was arrested exceeded the permissible duration of an investigatory stop. Further, the questioning and transportation of defendant during this period was beyond the scope of such a stop. *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *People v. Trujillo,* 710 P.2d 1169 (Colo.App.1985). However, because defendant expressly consented, in the absence of threats or coercion, to go to police headquarters for further questioning, he waived any challenge to the duration or scope of the intrusion. *People v. Hazelhurst,* 662 P.2d 1081 (Colo.1983).

Once at police headquarters, defendant was properly advised, validly waived his rights, and gave a statement. The trial court found the statement was voluntarily given, and since the finding is well-supported by the record, we refuse to disturb it. *People v. Cummings,* 706 P.2d 766 (Colo.1985); *People v. Trujillo, supra.*

Consequently, we conclude that defendant's statements made between 8:15 and 8:45 a.m. were properly admitted.

### II.

Defendant next contends that the search of the home he shared with his mother was invalid as (1) the fruit of an illegal arrest, (2) coerced, or (3) without authority. These contentions are without merit.

A voluntary consent to a warrantless search may be given by a third party who possesses common authority over, or other sufficient relationship to, the premises. *People v. Lucero,* 720 P.2d 604 (Colo. App.1985).

The trial court found, and we agree, that defendant's address was obtained as a result of proper questioning between 8:15 and 8:45 a.m., prior to his arrest. Additionally, the trial court found that there was no evidence that defendant's mother did not

voluntarily invite the detective into her house. The trial court also found that defendant's mother voluntarily consented to show the detective the shower cap which was in plain view in the bedroom, and that the knife was in plain view on the kitchen table. Finally, the trial court found that defendant's mother was the apparent owner of the property and could legally authorize the search.

These findings are supported by the record, and we will not disturb them. *People v. Donnelly*, 691 P.2d 747 (Colo.1984); *People v. Lucero, supra.*

### III.

Defendant next contends that the trial court erred in admitting his previously suppressed statements for impeachment purposes. He argues that the statements given after his arrest were involuntary and, therefore, inadmissible. We disagree.

Statements made by an accused under circumstances rendering the statements inadmissible for substantive purposes may be admitted for the limited purpose of impeaching the accused's credibility if the statements were voluntarily given. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *see also LeMasters v. People*, 678 P.2d 538 (Colo.1984).

The trial court found that defendant's statements were voluntarily made following a proper advisement of his rights. Defendant fails to point to any evidence requiring a contrary conclusion, and our own review of the record shows none. Hence, no error occurred. *People v. Donnelly, supra.*

### IV.

Defendant next contends that the detective's seizure of his wallet was the result of an illegal search of the Buick. He argues that he did not abandon the automobile and, thus, retained an expectation of privacy in its contents. We reject this contention.

To challenge a search and seizure, the complaining party must establish that he had a reasonable expectation that the location searched and the items seized would be free from nonconsensual, unreasonable police intrusion. *People v. Morrison*, 196 Colo. 319, 583 P.2d 924 (1978).

Defendant left the vehicle with its hood up, doors unlocked, facing the wrong way in the middle of a traffic lane. Defendant testified that he deliberately left his wallet in plain view in the vehicle so that others would know whom to contact concerning the car. This evidence belies the very notion of an expectation of privacy; rather, it mandates the conclusion that defendant took affirmative steps to ensure that his wallet would be found. Consequently, the evidence was properly admitted.

### V.

Defendant finally contends that the habitual criminal counts were not proved by duly authenticated documents. He argues that certification both by the trial judge and by the clerk of the court is essential to proper authentication. This argument is without merit. *People v. Johnson*, 699 P.2d 5 (Colo.App.1984).

The judgment is affirmed.

VAN CISE and BABCOCK, JJ., concur.