**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Jesus BUROLA, Respondent.**

**No. 92SC33.**

Supreme Court of Colorado, En Banc.

March 29, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Denver, Alexander M. Hunter, Dist. Atty., Twentieth Judicial Dist., Boulder, Bryan W. Quiram, Sp. Asst. Atty. Gen., Deputy Dist. Atty., Boulder, for petitioner.

Eisner & Schild, Peter Schild, Boulder, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

The court of appeals in *People v. Burola*, No. 90CA1908 (Colo.App. Nov. 21, 1991), reversed the judgment of conviction and the sentences imposed on the respondent, Jesus Burola, for conspiracy to distribute and sell cocaine, and for distribution and sale of cocaine. The trial court had denied Burola's motion to suppress cocaine and money seized by the police when a codefendant was arrested. The court of appeals subsequently reversed the trial court based on its separate conclusions that the inevitable discovery exception to the exclusionary rule did not apply to primary evidence and that the admission of the evidence was not harmless beyond a reasonable doubt. We granted certiorari and now affirm, and return the case to the court of appeals with directions to remand to the trial court for further proceedings consistent with this opinion.

I

On October 26, 1989, a police informant placed a call from the police department to Burola's girlfriend and arranged to buy two ounces of cocaine at her apartment that afternoon.[1] The police wired the informant with a one-way transmitter so that they could monitor the controlled drug purchase and conduct surveillance. Shortly after the informant arrived at the apartment, Ricardo Baca, the alleged supplier of

1. Burola's girlfriend testified that she had arranged to make a deal for the cocaine in an earlier phone conversation on October 26 with the police informant. The informant initially testified that he had gone to the girlfriend's apartment the previous day to set up a deal with Burola and his girlfriend to purchase the cocaine the next day. Later, however, he admitted on cross-examination that he spoke with Burola's girlfriend in two separate phone conversations on October 26.

the cocaine, appeared and entered the apartment through the back door.

The police became concerned about the safety of the informant because the transmitter worked only intermittently and the individuals in the apartment were speaking primarily Spanish. The police officers knocked on the door of the apartment, and after Burola's girlfriend denied them entrance, they admittedly entered the apartment unlawfully. As the police officers made their entry into the apartment, Baca jumped out of a bedroom window into the backyard. Baca was immediately arrested. The police officers searched him and discovered 41.9 grams of cocaine and the money used to purchase the cocaine in his pockets. The police also arrested Burola and his girlfriend, and seized additional cocaine they discovered during a post-arrest search of the apartment.

At a pretrial hearing, Burola moved to suppress the evidence seized from Baca and from inside the apartment. The prosecution stipulated that it would not use any of the items seized inside the apartment. The prosecution also stipulated that the initial entry into the apartment was unlawful and that Baca had jumped out of the window because of the unlawful entry. The prosecution claimed, however, that the evidence seized from Baca was admissible under either the inevitable discovery or independent source exceptions to the exclusionary rule.[2]

The trial court agreed that the evidence seized from Baca was admissible under the inevitable discovery exception to the exclusionary rule and denied Burola's motion to suppress the evidence. A jury subsequently convicted Burola of conspiracy to distribute and sell 28 grams of cocaine, and distribution and sale of 28 grams of cocaine, pursuant to section 18–18–105, 8B C.R.S. (1986).

Burola appealed the trial court's denial of his motion to suppress the evidence seized from Baca. The court of appeals found that the evidence was primary evidence and that the inevitable discovery exception did not apply to primary evidence. Based on that conclusion and its finding that the admission of the evidence was not harmless beyond a reasonable doubt, the court of appeals reversed the trial court.

We granted certiorari to review the decision of the court of appeals. We hold that the inevitable discovery exception to the exclusionary rule applies to both primary evidence and to secondary evidence, but conclude that the inevitable discovery exception is not applicable to the facts of this case. We agree with the court of appeals conclusion that the admission of the cocaine and money in this case was not harmless beyond a reasonable doubt.

## II

### A

The exclusionary rule is a judicially created remedy designed primarily to deter unlawful searches and seizures by the police. *People v. Fournier*, 793 P.2d 1176, 1179 (Colo.1990); *People v. Schoondermark*, 759 P.2d 715, 718 (Colo.1988); *e.g., United States v. Calandra*, 414 U.S.

---

2. Under the inevitable discovery exception, evidence initially discovered in an unconstitutional manner may be received if that same evidence inevitably would have been obtained lawfully. *People v. Schoondermark*, 759 P.2d 715, 718 (Colo.1988) (citing *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). Under the independent source exception, unconstitutionally obtained evidence may be admitted if the prosecution can establish that it was also discovered by constitutionally permissible means independent of the illegality. *Schoondermark*, 759 P.2d at 718 (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920); *People v. Madson*, 638 P.2d 18, 33 (Colo.1981)).

The prosecution has never claimed that there were exigent circumstances justifying a warrantless search of the apartment. Nor did the prosecution contend in the trial court that Burola lacked standing to object to the introduction of evidence seized from Baca. The court of appeals found that the prosecution lost the right to raise the standing question by failing to raise the issue in the trial court. *See Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Because the prosecution did not seek certiorari on the standing question, we do not address it.

338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Under the exclusionary rule, evidence that has been obtained in violation of the Fourth Amendment must be suppressed from presentation during the prosecution's case-in-chief. *Fournier,* 793 P.2d at 1179; *Schoondermark,* 759 P.2d at 718; *see generally United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

■■■ Primary evidence (also referred to as "direct" evidence), is evidence that is a direct product of an unlawful search, while secondary evidence (also referred to as "derivative" or "indirect" evidence) is evidence that is subsequently obtained from the primary evidence. *See Schoondermark,* 759 P.2d at 718 (citing *Nardone v. United States,* 308 U.S. 338, 340–41, 60 S.Ct. 266, 267–68, 84 L.Ed. 307 (1939); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 391–92, 40 S.Ct. 182, 182–83, 64 L.Ed. 319 (1920)).[3] The exclusionary rule applies to both the unlawfully obtained evidence itself and also to secondary evidence that is obtained from the primary evidence. *Schoondermark,* 759 P.2d at 718.

In *Schoondermark,* we recognized, however, that not all evidence obtained in violation of the Fourth Amendment must be suppressed under the exclusionary rule. *Id.* *Schoondermark* stated, "[t]hree doctrines, which have been labeled independent source, attenuation, and inevitable discovery, have been recognized as exceptions to the exclusionary rule and justify admission of evidence even though it is derived from information obtained in violation of the fourth amendment." *Id.* While *Schoondermark* involved the independent source exception to the exclusionary rule, in this case, we address the inevitable discovery exception.

## B

■■■ The initial question is whether the court of appeals properly interpreted the language in *Schoondermark* to mean that the inevitable discovery exception to the exclusionary rule applies only to secondary evidence. In our view, the court of appeals erred in stating that the inevitable discovery exception applies only to secondary evidence. At no point in our general discussion of the three exceptions to the exclusionary rule in *Schoondermark* did we declare such a limitation. Nor have we approved of such a restriction in any other case.

Similarly, in adopting the inevitable discovery exception to the exclusionary rule in *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the United States Supreme Court did not address the application of the exception to primary evidence rather than to secondary evidence. The reasoning of *Nix,* however, suggests that the Court would make no distinction between primary and secondary evidence. *Commonwealth v. O'Connor,* 406 Mass. 112, 546 N.E.2d 336, 339 (1989); *see also United States v. Pimentel,* 810 F.2d 366, 368–69 (2d Cir.1986). While the inevitable discovery exception has been applied most frequently to secondary evidence, there is no logical reason not to apply the exception to primary evidence. *See* Stephen H. LaCount & Anthony J. Girese, *The "Inevitable Discovery" Rule, an Evolving Exception to the Constitutional Exclusionary Rule,* 40 Alb.L.Rev. 483, 507 (1976).

In fact, numerous courts specifically have refused to limit the inevitable discovery exception to secondary evidence. *See United States v. Whitehorn,* 829 F.2d

---

**3.** Professor LaFave has explained the distinction between primary evidence and secondary evidence as follows:

In the simplest of Fourth Amendment exclusionary rule cases, the challenged evidence is quite clearly "direct" or "primary" in its relationship to the prior arrest or search, so that if it is determined that a Fourth Amendment violation has occurred it is apparent that the consequence must be suppression of that evidence in the trial of a defendant who has standing to object to the violation....

Not infrequently, however, challenged evidence is "secondary" or "derivative" in character.... In these situations, it is necessary to determine whether the derivative evidence is "tainted" by the prior Fourth Amendment violation. To use the phrase coined by Justice Frankfurter, it must be decided whether that evidence is the "fruit of the poisonous tree." *See* 4 Wayne R. LaFave, *Search and Seizure* § 11.4, at 369–70 (2d ed. 1987) (footnotes omitted).

1225, 1232 (2d Cir.1987) (rejecting distinction between direct and indirect evidence), *cert. denied,* 487 U.S. 1237, 108 S.Ct. 2907, 101 L.Ed.2d 939 (1988); *Pimentel,* 810 F.2d at 369 (holding that inevitable discovery exception applies to both direct and indirect products of the unlawful search); *O'Connor,* 406 Mass. 112, 546 N.E.2d at 339 (concluding that application of the inevitable discovery exception was not automatically precluded for primary evidence). Other courts, while not stating that the inevitable discovery exception also applies to primary evidence, have concluded that primary evidence was admissible under the exception that otherwise would have been excluded. *See, e.g., United States v. Mancera–Londono,* 912 F.2d 373 (9th Cir. 1990); *United States v. McConnell,* 903 F.2d 566 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991); *State v. Vincik,* 436 N.W.2d 350 (Iowa 1989); *Clough v. State,* 92 Nev. 603, 555 P.2d 840 (1976).

Accordingly, we conclude that the inevitable discovery exception to the exclusionary rule applies to both primary and secondary evidence. Based on our conclusion, however, we must determine whether the trial court properly found that the evidence the police seized from Baca is encompassed within the inevitable discovery exception.

### C

■ The inevitable discovery exception to the exclusionary rule allows evidence initially discovered in an unconstitutional manner to be received, but only if the prosecution can establish that the information ultimately or inevitably would have been discovered by lawful means. *Nix,* 467 U.S. at 444, 104 S.Ct. at 2509; *Schoondermark,* 759 P.2d at 718; *People v. Briggs,* 709 P.2d

911 (Colo.1985); *see also* 4 Wayne R. La-Fave, *Search and Seizure* § 11.4(a), at 378 (2d ed. 1987) (stating that the inevitable discovery exception asks whether evidence found because of a Fourth Amendment violation would inevitably have been discovered lawfully). The fact that makes discovery of the evidence inevitable must "arise from circumstances other than those disclosed by the unlawful search itself" because otherwise the inevitable discovery exception will swallow the exclusionary rule. *United States v. Thomas,* 955 F.2d 207, 211 (4th Cir.1992).

In *Briggs,* we recognized that the inevitable discovery exception differs in one key respect from the independent source exception, "specifically, the evidence sought to be introduced at trial [under the inevitable discovery exception] has not actually been obtained from an independent source, but rather would have been discovered as a matter of course if independent investigations were allowed to proceed." *Briggs,* 709 P.2d at 923 (quoting from *Nix,* 467 U.S. at 459, 104 S.Ct. at 2517 (Brennan, J., dissenting)); *see also People v. Quintero,* 657 P.2d 948, 951 (Colo.1983) (holding that evidence was not admissible under the inevitable discovery exception because there was no evidence of independent investigatory measures and that the record "lack[ed] even a hint of an independent route" by which the evidence could have been obtained), *cert. granted, Colorado v. Quintero,* 463 U.S. 1206, 103 S.Ct. 3535, 77 L.Ed.2d 1386, *cert. dismissed,* 464 U.S. 1014, 104 S.Ct. 543, 78 L.Ed.2d 719 (1983). Although the opinions of the federal circuit courts of appeal are divided, the better-reasoned decisions have similarly concluded that the inevitable discovery exception requires an independent police investigation.[4]

---

**4.** For example, *United States v. Cherry,* 759 F.2d 1196, 1205–06 (5th Cir.1985), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987) held that "[i]n order for the [inevitable discovery] exception to apply, the prosecution must demonstrate both a reasonable possibility that the evidence would have been discovered in the absence of police misconduct and that the government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation."

Absent independent police investigation, other federal circuit courts of appeal have declined to apply the inevitable discovery exception. *See, e.g., United States v. Owens,* 782 F.2d 146, 152 (10th Cir.1986); *United States v. Satterfield,* 743 F.2d 827, 846 (11th Cir.1984), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985); *see also United States v. Buchanan,* 904 F.2d 349, 357 (6th Cir.1990) (rejecting inevitable discovery argument because government agents were not pursuing an alternate line of investiga-

Moreover, courts have recognized the danger of admitting unlawfully obtained evidence under the inevitable discovery exception "on the strength of some judge's speculation that it would have been discovered anyway." *See, e.g., United States v. Romero,* 692 F.2d 699, 704 (10th Cir.1982) (quoting *United States v. Castellana,* 488 F.2d 65, 68 (5th Cir.1974), *rev'd on other grounds,* 500 F.2d 325 (5th Cir.1974) (en banc)).

### D

■ In analyzing whether the inevitable discovery exception applies to the facts of this case and the record before us, we cannot conclude that the prosecution established that the evidence seized from Baca ultimately or inevitably *would* have been discovered by lawful means. *E.g., Owens,* 782 F.2d at 151–52 (rejecting prosecution's claim that cocaine in hotel room would have been inevitably discovered when room was cleaned because "of the highly speculative assumption of 'inevitability' that would be required to apply" the inevitable discovery exception).[5]

The trial court correctly recognized that by the very nature of undercover controlled drug purchases, it is not inevitable that the informant necessarily leaves the premises with the illegal contraband. In this case, the drug transaction was never completed. Absent the unlawful entry, it is not inevit-

able that the police would have found any of the cocaine in the apartment of Burola's girlfriend in a subsequent search pursuant to a lawful warrant.[6] In fact, the police never obtained a warrant following the unlawful entry into the apartment.

■ It is possible that the informant could have related what he observed inside the apartment to the police. Based on that information, the police may have been able to obtain a warrant for the search of the apartment or of Baca. The ability to subsequently obtain a lawful search warrant, however, does not automatically satisfy the requirements for the inevitable discovery exception. *United States v. Satterfield,* 743 F.2d 827 (11th Cir.1984), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985) suggested that:

> [I]f evidence is obtained by illegal conduct, the illegality can be cured only if the police possessed and were pursuing a lawful means of discovery at the time the illegality occurred. The Government cannot later initiate a lawful avenue of obtaining the evidence and then claim that it should be admitted because its discovery was inevitable. This is a sound rule, especially when applied to a case in which a search warrant was constitutionally required. Because a valid search

---

tion); *United States v. Silvestri,* 787 F.2d 736, 746 (1st Cir.1986) (stating that an active pursuit of independent investigation requirement may be appropriate in illegal search cases where no warrant is ever obtained), *cert. denied,* 487 U.S. 1233, 108 S.Ct. 2897, 101 L.Ed.2d 931 (1988); *but see United States v. Ramirez–Sandoval,* 872 F.2d 1392, 1399 (9th Cir.1989) (holding that there is no requirement that evidence be obtained from a previously initiated independent investigation).

**5.** Professor LaFave has suggested that:

[C]ourts must be extremely careful not to apply the "inevitable discovery" rule upon the basis of nothing more than a hunch or speculation as to what otherwise might have occurred. A "majority of the courts that have utilized the exception have tended to define the necessary probability in terms of 'would,' " and that requirement must be strictly adhered to.

*See* 4 Wayne R. LaFave, *Search and Seizure* § 11.4(a), at 383 (2d ed. 1987) (footnotes omitted).

Another commentator has noted:

The significance of the word "would" cannot be overemphasized. It is not enough to show that the evidence "might" or "could" have been otherwise obtained. Once the illegal act is shown to have been in fact the sole effective cause of the discovery of certain evidence, such evidence is inadmissible unless the prosecution severs the causal connection by an affirmative showing that it *would* have acquired the evidence in any event.

Robert F. Maguire, *How to Unpoison the Fruit— The Fourth Amendment and the Exclusionary Rule,* 55 J.Crim.L. & Criminology 307, 315 (1964).

**6.** One of the police officers who participated in the undercover operation conceded this point in his testimony.

warrant nearly always can be obtained after the search has occurred, a contrary holding would practically destroy the requirement that a warrant for the search of the home be obtained *before* the search takes place.

*Id.* at 846 (citations omitted); *see also United States v. Silvestri*, 787 F.2d 736, 744–45 (1st Cir.1986) (recognizing that the protection provided by the Fourth Amendment would be substantially weakened by allowing the admission of evidence found during a warrantless search merely because the prosecution could subsequently show that sufficient probable cause existed to justify the issuance of a warrant), *cert. denied*, 487 U.S. 1233, 108 S.Ct. 2897, 101 L.Ed.2d 931 (1988).

Finally, in this case, there is no evidence of independent investigatory measures by which the evidence seized from Baca would have been inevitably discovered. *See United States v. Buchanan*, 904 F.2d 349, 357 (6th Cir.1990) (inevitable discovery exception did not apply because unlawful entry onto premises tainted the only investigation that was ongoing); *Owens*, 782 F.2d at 152 (same); *cf. Fletcher v. Wainwright*, 399 F.2d 62, 64 (5th Cir.1968) (holding that evidence thrown out of motel room window and subsequently discovered by police was not admissible where police initially had entered the room unlawfully).

For the foregoing reasons, we cannot agree with the trial court's conclusion that the evidence the police seized from Baca falls within the inevitable discovery exception to the exclusionary rule.

### III

■ Having found that the admission of the evidence under the inevitable discovery exception was erroneous, we next address whether the trial court's admission of the evidence constitutes harmless error. It is well settled that if an asserted error is of constitutional dimension, reversal is required unless the court is convinced that the error was harmless beyond a reasonable doubt. *E.g., Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh'g denied*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); *Bartley v. People*, 817 P.2d 1029, 1034 (Colo.1991); *see also People v. Myrick*, 638 P.2d 34, 38 (Colo. 1981) (holding that a constitutional error is harmless only when the case against a defendant is so overwhelming that the violation was harmless beyond a reasonable doubt).

In this case, there was conflicting testimony as to Burola's involvement in the sale and distribution of the cocaine. At trial, Burola's girlfriend testified that Burola knew nothing of the proposed cocaine buy until the informant and Baca arrived at the apartment. She also testified that Burola and Baca conversed in Spanish as the drug transaction was occurring and that Burola obtained one of her scales to weigh the cocaine.

■ Without the physical evidence, the prosecution's case against Burola consisted of the testimony of his girlfriend, who denied that Burola was involved in arranging the drug sale, and the testimony of a police informant, who admitted to arbitrarily lying twenty-five percent of the time.[7] Moreover, absent the physical evidence, the prosecution could not prove the amount of the cocaine involved, a directly relevant issue in this case. *See* § 18–18–105(3), 8B C.R.S. (1986).

Based on the record before us, we agree with the court of appeals that the error in

---

**7.** On cross-examination, the police informant admitted to telling the truth only seventy-five percent of the time:

[Defense Counsel]: Are you always a truthful person?
[Informant]: I'd say 75 percent of the times I am.
[Defense Counsel]: Twenty-five percent of the time you lie?

[Informant]: Yes.
[Defense Counsel]: Generally you lie if you think it will work to your benefit; isn't that true?
[Informant]: No, that's not true.
[Defense Counsel]: You just arbitrarily choose 25 percent of the time to lie?
[Informant]: Yes.

this case was not harmless beyond a reasonable doubt.

## IV

Accordingly, we affirm and return the case to the court of appeals with directions to remand to the trial court for further proceedings consistent with this opinion.