The PEOPLE of the State of Colorado,
Petitioner/Cross–Respondent,

v.

George R. LITCHFIELD and James
L. Bracket, Respondents/Cross–
Petitioners.

No. 95SC331.

Supreme Court of Colorado,
En Banc.

June 3, 1996.

Rehearing Denied June 24, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Robert M. Petrusak, Senior Assistant Attorney General, Criminal Enforcement Section, Denver, for Petitioner/Cross–Respondent.

John J. Mitchel, Montrose, for Respondent/Cross–Petitioner George T. Litchfield.

John Turner, Colorado Springs, for Respondent/Cross–Petitioner James L. Bracket.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *People v. Litchfield,* 902 P.2d 921 (Colo.App.1995), reversing the district court's denial of the defendants' mo-

tion to suppress evidence seized during a search of their rental car. The court of appeals held that the search was justified neither as a protective search nor as an inventory search under section 42–5–107, 17 C.R.S. (1995 Supp.). Although we employ different reasoning, we agree with the court of appeals that the search of the trunk of the defendants' car was unlawful. We therefore affirm and return the case to the court of appeals with directions to remand to the district court for further proceedings consistent with this opinion.

## I.

The defendants, James L. Bracket and George R. Litchfield, were charged with possessing marijuana with intent to sell pursuant to section 18–18–106, 8B C.R.S. (1990 Supp.) (repealed 1992).[1] After entering a plea of not guilty to the charge, the defendants filed separate motions to suppress all evidence seized during a search of the automobile in which they were traveling at the time. The district court held a combined hearing to consider the motions at which the following pertinent facts were established.

On May 13, 1991, at approximately 12:45 in the afternoon, Trooper Robert Keith Hoey of the Colorado State Patrol observed a red Thunderbird weaving on Colorado Highway 50 north of Montrose, Colorado. Trooper Hoey also noticed that the car had Florida license plates with the word "lease" on them. Hoey stopped the vehicle and approached the driver's side of the car where he encountered Bracket at the wheel.

Hoey asked Bracket for his license and the car rental papers. Bracket gave Hoey his license and a car rental contract. After inspecting the contract, Hoey noticed that the agreement was unsigned and was for a Mustang convertible. Bracket produced a second rental contract which listed the Thunderbird as the rental car. The vehicle identification number on the contract matched the vehicle identification number on the Thunderbird; however, this contract was also unsigned. In addition, Hoey noticed that a clause in the

Thunderbird rental contract stated that the car could not be taken outside of Arizona or Nevada. The rental agreement was not due to expire for four days.

Hoey asked Litchfield, a passenger in the car at the time, for his license. After obtaining Litchfield's license, Hoey went back to his car to check both licenses on the police radio system. This check indicated that Bracket had a criminal history and that Litchfield did not. However, there were no outstanding warrants for either of them. In addition, the police had no record that the Thunderbird was a stolen vehicle. While in his car, Hoey requested backup from his supervisor and Sergeant Mitchell reported to the scene.

When Mitchell arrived he reviewed the unsigned rental agreements. He testified that because of the lack of a signature on the rental agreements, he suspected that the Thunderbird had been stolen. In addition, Mitchell explained that the fact that the car rental contract specified that the car could not be driven outside of Arizona and Nevada gave him "good and sufficient reason to believe that the occupants weren't rightfully in possession of the vehicle." Based on this information, Mitchell decided to seize the rental car pursuant to section 42–5–107, 17 C.R.S. (1995 Supp.), and transport it to the state patrol office. Mitchell planned to contact the rental car company from the state patrol office to determine whether Bracket and Litchfield had rightful possession.

Mitchell then approached the car and asked Bracket what he was doing in Colorado. Bracket explained that he was a "bowling alley salesman" and that he and Litchfield were traveling from Tucson to Denver visiting bowling alleys on business. Mitchell asked Bracket if he had any materials to substantiate his claim. Bracket gave Mitchell a business card but could not produce any catalogs or pamphlets regarding his business. Bracket had previously told Hoey that he and Litchfield were bowling alley repairmen.

---

1. In 1992, the legislature repealed and reenacted with amendments article 18 of title 18 as the Uniform Controlled Substances Act. *See* ch. 71, sec. 1, §§ 18–18–101 to –605, 1992 Colo. Sess. Laws 324.

Mitchell also asked Bracket about the two rental contracts. Bracket explained that he originally rented a red Mustang. Because the Mustang had a defective tire, Bracket returned it to the rental company and procured the Thunderbird in its place.

Mitchell informed Bracket and Litchfield of his decision to seize the car; however, he explained that they were not under arrest and were free to leave at any time. He told them that he would inventory the car and that if no guns were found, the two could drive the car to the police station. Litchfield and Bracket stepped out of the car while Mitchell conducted the search. Mitchell searched the passenger compartment and then opened the trunk of the car where he smelled and observed a bale of marijuana. Mitchell arrested Bracket and Litchfield.

In denying the defendants' motion to suppress, the district court ruled that the officers had good and sufficient reason to question rightful ownership of the car. Thus, the court found that section 42–5–107, 17 C.R.S. (1995 Supp.), authorized the seizure of the car. The court further found that the search of the vehicle was appropriate either as an inventory search or as a protective search for weapons.

After a trial to the bench, both Litchfield and Bracket were found guilty of possessing marijuana with intent to sell pursuant to section 18–18–106, 8B C.R.S. (1990 Supp.). Each was sentenced to seven years imprisonment in the department of corrections. Both defendants appealed their convictions to the Colorado Court of Appeals claiming that the district court erred in denying their motions to suppress.[2]

The court of appeals reversed the district court's denial of the defendants' motions to suppress.[3] *See People v. Litchfield*, 902 P.2d 921, 924 (Colo.App.1995). The court of appeals held that the officers did not have a reasonable suspicion that the defendants had committed theft of rental property. *Id.* at 923. Therefore, the officers' investigatory stop of the defendants was unlawful and a protective search of the car pursuant to this stop was unwarranted. *Id.* at 924. In addition, the court of appeals held that the seizure of the car was not authorized under section 42–5–107, 17 C.R.S. (1995 Supp.), and the search was not an authorized inventory search under the regulations governing inventory searches in the Colorado State Patrol Manual of Policy, Rule and Procedure, Chapter 302.3(III). *Litchfield*, 902 P.2d at 924.

The prosecution petitioned this court for certiorari review of the court of appeals ruling. We granted certiorari to determine:

Whether the court of appeals erred in holding that state patrol officers lacked "good and sufficient" cause pursuant to section 42–5–107, 17 C.R.S. (1994 Supp.)[4] to temporarily seize and inventory defendants' rental car.

We hold that under the circumstances of this case in order to establish good and sufficient cause for the seizure pursuant to section 42–5–107, 17 C.R.S. (1995 Supp.), the prosecution must prove that at the time of the seizure, the officers had a reasonable suspicion that criminal activity had occurred or was about to take place. We further hold that the prosecution did prove such reasonable suspicion. However, the minimally intrusive search permissible under a reasonable suspicion standard would only have encompassed a protective weapons search of the passenger compartment of the vehicle and would not have extended such search to the vehicle's trunk. Therefore, we affirm the court of appeals and reverse the district court's denial of the defendants' motions to suppress. We return the case to

---

2. Both defendants also filed motions to dismiss claiming that the charges constituted a violation of their rights under the double jeopardy clauses of the United States and Colorado Constitutions. *See* U.S. Const. Amend. V; Colo. Const. Art. II, § 18. The district court denied this motion. The court of appeals affirmed. *People v. Litchfield*, 902 P.2d 921, 925 (Colo.App.1995). As this issue was not within our grant of certiorari, we do not address it.

3. Bracket made a motion to consolidate his appeal with that of Litchfield. The court of appeals granted this motion and consolidated the appeals.

4. This statute is presently located in the 1995 Supplement to 17 C.R.S. All citations to the statute in this opinion reference the 1995 Supplement.

the court of appeals with directions to remand the case to the district court for further proceedings consistent with this opinion.

## II.

### A.

■ Because the stop of a car implicates constitutional concerns regarding an individual's right to be free from unreasonable searches and seizures, we begin our analysis of the questions at issue in this case with an overview of Fourth Amendment jurisprudence. *See* U.S. Const. Amends. IV, XIV; Colo. Const. Art. II, § 7. Generally, in order to make a formal arrest or to conduct a full-scale search of an individual, an officer must have a warrant or probable cause to believe that a crime has been or is being committed. *People v. Melgosa*, 753 P.2d 221, 225 (Colo. 1988). The probable cause standard is designed to protect citizens from rash and unreasonable interferences with privacy while allowing officers flexibility in enforcing the law. *Id.*

■ Although probable cause is generally required, we have recognized that in certain circumstances involving limited intrusions into an individual's personal privacy or security, a diminished standard of "reasonable suspicion" may suffice. *E.g., People v. Tate*, 657 P.2d 955, 958 (Colo.1983); *Stone v. People* 174 Colo. 504, 509, 485 P.2d 495, 497 (1971). We have applied this reasonable suspicion standard in cases involving investigatory stops of automobiles. *E.g., People v. George*, 914 P.2d 367 (Colo. 1996); *People v. Weston*, 869 P.2d 1293 (Colo.1994); *People v. Sosbe*, 789 P.2d 1113 (Colo.1990). Under the reasonable suspicion standard, an officer may stop an automobile and question the driver if (1) he has an articulable and specific basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to occur; (2) if the purpose of the intrusion is reasonable; and (3) if the scope and character of the intrusion is reasonably related to its purpose. *Weston*, 869 P.2d at 1296; *People v. Lagrutta*, 775 P.2d 576, 579 (Colo.1989); *Stone*, 174 Colo. at 509, 485 P.2d at 497. Similarly, the United States Supreme Court

has held that such a seizure may be justified on less than probable cause, so long as the seizure is "minimally intrusive and operational necessities render it the only practicable means of detecting certain types of crime." *Arizona v. Hicks*, 480 U.S. 321 at 327, 107 S.Ct. 1149 at 1154, 94 L.Ed.2d 347 (1987).

### B.

■ The prosecution argues that the officers properly seized Litchfield's and Bracket's car pursuant to section . 42–5–107, 17 C.R.S. (1995 Supp.). The prosecution claims that the officers had a reasonable suspicion that Bracket and Litchfield were not rightfully in possession of the rental car. We agree.

Section 42–5–107 provides:

> All peace officers are authorized to take and hold possession of any motor vehicle or component part if its engine number, vehicle identification number, or manufacturer's serial number has been altered, changed or obliterated or if such officer *has good and sufficient reason to believe that* the motor vehicle or component part is not in the rightful possession of the driver or person in charge thereof.

(Emphasis added.) As an initial matter, we must interpret the phrase "good and sufficient cause" in section 42–5–107. Since the constitution requires that an officer must have a reasonable suspicion of criminal activity in order to stop a vehicle, and since we must construe statutes in such a manner as to avoid questions of constitutional validity, section 42–5–107 cannot be read to provide a more lenient standard for investigatory stops and temporary detentions than that which is constitutionally mandated. Therefore, we interpret the phrase "good and sufficient cause" in section 42–5–107 to mean reasonable suspicion.

Since we have decided that section 42–5–107 requires an officer to have reasonable suspicion in order to detain a vehicle temporarily for the purpose of determining rightful ownership, we turn now to a consideration of whether the officers in this case had such reasonable suspicion.

■ Here, the officers' suspicion was based upon an unsigned rental contract that included a contractual provision limiting geographical travel. The officers also had knowledge of another unsigned contract for a different vehicle, and knowledge that Bracket contradicted himself regarding their purpose in traveling through Colorado. These facts rise to a level sufficient to comprise a reasonable suspicion that a crime had been or was being committed. Thus, it was certainly reasonable for the officers to conclude that they needed more information from the rental company; and, it was reasonable to detain the vehicle temporarily in order to obtain that information.

### III.

The prosecution next argues that because the officers made a valid investigatory stop of the vehicle, the officers were justified in conducting both a protective search for weapons and an inventory search of the vehicle. Although we agree that under the circumstances the officers were justified in conducting a protective weapons search of the passenger compartment of the vehicle, we do not view the protective search as properly encompassing the vehicle's trunk. Further, because the vehicle had not yet been impounded, we hold that the officers had no justifiable reason for conducting an inventory search of the vehicle.

### A.

■ A warrantless search and resulting seizure are presumptively unreasonable unless the search falls within certain recognized exceptions to the warrant requirement. *People v. Hauseman*, 900 P.2d 74, 77 (Colo.1995). One such exception is a protective weapons search pursuant to an investigatory stop. *See Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). The purpose of such a search is not to discover evidence of crime but to allow an officer to pursue an investigation without fear of violence.

■ In the context of a roadside encounter, an officer may conduct a protective search for weapons not only of the driver's person but also of the passenger compartment of the vehicle. *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983). The officer may conduct such a search only if he possesses "a reasonable belief based on specific and articulable facts that the suspect is dangerous and may gain control of a weapon." *People v. Corpany*, 859 P.2d 865, 869 (Colo.1993) (citing *Long*, 463 U.S. at 1049, 103 S.Ct. at 3480). Because the protective search of an automobile is justified solely by the danger that weapons stored in the vehicle could be used against the officer, the officer may search only those areas of the passenger compartment of an automobile in which a weapon may be placed or hidden. *Corpany*, 859 P.2d at 869; *Melgosa*, 753 P.2d at 225.

■ We have applied a four-part analysis when analyzing the propriety of a roadside protective search for weapons. In order to conduct such a search: (1) there must be an articulable and specific basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to occur; (2) the purpose of the intrusion must be reasonable; (3) the scope and character of the intrusion must be reasonably related to its purpose; and (4) there must be specific and articulable facts which reasonably cause the officer to believe that the suspect is armed and dangerous and may gain immediate control of the weapon. *Corpany*, 859 P.2d at 870; *People v. Cagle*, 751 P.2d 614, 616–17 (Colo.), *appeal dismissed sub nom. Cagle v. Colorado*, 486 U.S. 1028, 108 S.Ct. 2009, 100 L.Ed.2d 597 (1988).

■ In the present case, because the officers had a specific and articulable reasonable suspicion that the defendants were not in rightful possession of the car, the temporary seizure was reasonable.[5] *See supra* part II. However, we hold that the scope of the officers' search was unreasonable. The officers did not limit their search to the passenger compartment of the car, where arguably the defendants might have gained control of a

---

**5.** Since we resolve the case on the basis of factors (1) through (3), we do not reach the question of whether the officers had a reasonable belief that the defendants were armed and dangerous.

weapon. Instead, after finding nothing in the passenger compartment, the officers extended their search to the trunk.[6] The search of the trunk was unnecessary for the protection of the officers as neither defendant would have access to the trunk during the short drive to the state patrol office. The search of the trunk was not reasonably related to the purpose of protecting the officers from harm. Therefore, we hold that in this case the search of the trunk exceeded the scope of a proper protective search.

### B.

■ A second exception to the warrant requirement involves administrative inventory searches. *See Colorado v. Bertine,* 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987) (permitting warrantless search of automobile upon lawful arrest); *People v. Taube,* 864 P.2d 123, 131 (Colo.1993) (explaining that in limited circumstances an inventory search may be conducted without judicial authorization or a finding of probable cause). An officer who has validly taken a vehicle into custody may make an inventory search of the contents of the vehicle. *See South Dakota v. Opperman,* 428 U.S. 364, 373, 96 S.Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976) (stating: "[T]his Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents.").

■ Such searches are part of the routine administrative caretaking function of the police. The purpose of an inventory search is to "protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property, and to guard the police from danger."[7] *Bertine,* 479 U.S. at 372, 107 S.Ct. at 741. An inventory search, may not be used "as a ruse for general rummaging" by the police in order to discover incriminating evidence. *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990); *Hauseman,* 900 P.2d at 78. Furthermore, when conducting an inventory search, the police must follow standardized procedures and criteria.[8] *Taube,* 864 P.2d at 130.

At the time of the search of the vehicle, the officers' temporary detention of the vehicle had not yet ripened into an impoundment. Therefore, a full inventory search was not permissible.[9] The officers' stated purpose for temporarily seizing the vehicle was to transport the vehicle to Montrose, at which time they would contact the rental car company to determine if Bracket and Litchfield had rightful possession of the car. During the temporary detention, the officers had neither impounded the car nor taken it into custody. We also note that Sergeant Mitchell specifically told the defendants that he was going to undertake a protective weapons search for guns, not a formal inventory of the vehicle's contents. Because Litchfield and Bracket would have maintained control over the car and their belongings within it while the officers checked with the rental company, there was no need for the officers to inventory the contents of the car. Official concerns

---

6. We note that Sergeant Mitchell found another unsigned rental contract in the glove compartment for yet a third vehicle. However, the prosecution did not argue that such contract elevated his reasonable suspicion to probable cause. Thus, nothing Sergeant Mitchell found during his search of the passenger compartment heightened his level of suspicion or would suffice to constitute probable cause justifying a full search. Nonetheless, he continued his search into the trunk of the vehicle.

7. The reference to danger in an inventory search is meant to protect the public should a weapon be left unsecured and unattended in an impounded vehicle. *See Opperman,* 428 U.S. at 374, 96 S.Ct. at 3099 (discussing *Cady v. Dombrowski,* 413 U.S. 433, 436, 93 S.Ct. 2523, 2525, 37 L.Ed.2d 706 (1973)).

8. Inventory searches must be conducted according to standard police procedures in order to ensure that the intrusion would be limited in scope to the extent necessary to carry out the police caretaking functions. *Opperman,* 428 U.S. at 375, 96 S.Ct. at 3100.

9. The Revised Vehicle Inventory Procedures in the Colorado State Patrol manual discuss the purpose of an inventory search as follows: "[O]nce a vehicle has been impounded by a police agency, the vehicle in its entirety may be inventoried to protect items of value which may be contained in the vehicle." Colorado State Patrol Manual of Policy, Rule and Procedure, Ch. 302.3 (July 1, 1989).

of preventing theft and forestalling claims would not have been implicated during such a limited detention. Thus, the search of the defendants' vehicle was not justified as an inventory search.[10]

## IV.

In conclusion, we hold that in order to detain a vehicle pursuant to section 42–5–107, 17 C.R.S. (1995 Supp.), the officer must have reasonable suspicion that the individuals in charge of the vehicle do not have rightful possession. In this case, although the officers had sufficient reasonable suspicion to temporarily seize the car, there was no justification for their search of the trunk of the car. The search was justified neither as a protective weapons search nor as an inventory search. Thus, although we employ different reasoning, we affirm the decision of the court of appeals. The district court erred in denying the defendants' motions to suppress evidence seized during an unlawful search of their car. Therefore, we return the case to the court of appeals with directions to remand the case to the district court for further proceedings consistent with this opinion.

VOLLACK, C.J., dissents, and SCOTT, J., joins in the dissent.

Chief Justice VOLLACK dissenting:

The majority holds that although the officers had reasonable suspicion to conduct a protective search of the respondents' rental vehicle, the officers exceeded the scope of the protective search by extending the search to the trunk of the vehicle. I dissent because I believe the district court properly denied the respondents' motion to suppress the evidence discovered in the vehicle's trunk. I would hold that, pursuant to the doctrine of inevitable discovery, the evidence found in the trunk of the respondents' vehicle was properly admitted. Such evidence would inevitably have been discovered during an inventory search of the vehicle because, at the time of the search, the officers had decided to seize

the vehicle pursuant to section 42–5–107, 17 C.R.S. (1993).

## I.

On May 13, 1991, Trooper Robert Hoey (Officer Hoey) of the Colorado State Patrol stopped a red Ford Thunderbird for weaving on Colorado Highway 50 near Montrose, Colorado. The word "lease" was written on the bottom of the vehicle's license plates, which indicated to Officer Hoey that this was a rental car. James Bracket (Bracket) was driving the vehicle and George Litchfield (Litchfield) was the passenger.

After approaching the vehicle, Officer Hoey asked Bracket to produce a driver's license and a rental agreement. Bracket produced his driver's license, but gave Officer Hoey a rental agreement for a Ford Mustang convertible rather than for the Thunderbird which he was driving. After Officer Hoey informed him of the error, Bracket produced a rental agreement for the Thunderbird. Officer Hoey noted that this rental agreement had not been signed. Officer Hoey testified at the suppression hearing that, in his experience, the lack of a signature on a rental agreement makes the document invalid. Officer Hoey also noted that the rental agreement stated that the car was not to be operated outside the states of Arizona and Nevada.

Officer Hoey then called his supervisor, Sergeant John Mitchell (Sergeant Mitchell) at the state patrol office. Sergeant Mitchell responded to the location where Officer Hoey had stopped the respondents' vehicle. Sergeant Mitchell examined the rental agreement and noted that it had not been signed even though there was an "X" placed on a line to indicate where it should have been signed. Sergeant Mitchell also noted the provision which stated that the car was only to be driven in Arizona and Nevada. The lack of the signature created some suspicion in Sergeant Mitchell's mind that the rental vehicle could have been stolen. Moreover, when Sergeant Mitchell considered the fact that the rental agreement clearly specified

---

**10.** If after contacting the rental car agency, the police officers determined that Litchfield and Bracket did not have rightful possession of car,

they could have impounded the vehicle and conducted an inventory search at that time.

that the car was only to be driven in Arizona and Nevada, he felt that he had good and sufficient reason to believe that the occupants of the vehicle were not rightfully in possession of the vehicle. Accordingly, Sergeant Mitchell decided to seize the rental car pursuant to section 42–5–107 for the purpose of determining rightful possession of the vehicle. Sergeant Mitchell did not believe the respondents were in rightful possession of this vehicle and it was his intention to hold this vehicle for investigation. Sergeant Mitchell planned to accomplish this investigation of the vehicle by moving it to a state patrol office located six miles from where it was stopped.

Sergeant Mitchell then directed Bracket to move the vehicle further onto the shoulder and to step out for greater safety. Sergeant Mitchell asked Bracket what he was doing in Colorado; Bracket answered that he was a "bowling alley salesman" and that he and his friend were traveling from Tucson to Denver, going to different bowling alleys on business. Sergeant Mitchell asked Bracket if he had any materials which would substantiate this claim. Bracket produced a business card but stated that he did not have any brochures or pamphlets. Bracket had previously told Officer Hoey that he and Litchfield were "bowling alley repairmen" traveling from Phoenix to Denver to find repair jobs in the Denver area.

Sergeant Mitchell then told Bracket that he was going to seize the car pursuant to section 42–5–107, but that no arrest was being effected at this time. In this regard, Sergeant Mitchell expressed his expectation that the respondents would have to remove their belongings from this vehicle and find another vehicle. Sergeant Mitchell also informed Bracket that he would have to search the vehicle pursuant to state patrol policy and that he was particularly concerned with the presence of guns in the car. He indicated that if there were no guns in the vehicle, Bracket and Litchfield would be allowed to drive the vehicle to the state patrol office. Sergeant Mitchell then asked Bracket and Litchfield if all items of personal property in the vehicle belonged to them and they answered in the affirmative.

Sergeant Mitchell began conducting a search of the vehicle. After he completed searching the passenger compartment of the vehicle, he opened the trunk. Immediately upon opening the trunk, Sergeant Mitchell was struck by "an extremely pungent odor of raw marijuana." Sergeant Mitchell immediately observed a bale of marijuana of approximately thirty pounds. Sergeant Mitchell and Officer Hoey subsequently arrested Bracket and Litchfield.

The respondents were charged with possession of marijuana with intent to sell. They filed a motion to suppress the marijuana seized from the rental car, which the trial court denied. After a bench trial, the respondents were convicted of possession of marijuana with intent to sell. The court of appeals reversed and remanded this matter, holding that the trial court erroneously denied the respondents' motion to suppress the marijuana.

## II.

The majority holds that, because the police officers had a reasonable suspicion that Bracket and Litchfield were not rightfully in possession of the rental car, the officers were justified in conducting a protective weapons search of the passenger compartment of the vehicle. I agree with this conclusion. However, the majority finds that the search of the vehicle's trunk was not justified as a protective search or as an inventory search. The majority thus concludes that the district court improperly denied the respondents' motion to suppress the evidence found in the trunk of the rental vehicle. I dissent because, at the time of the search, the officers had decided to seize the rental vehicle pursuant to section 42–5–107, thus making the evidence found in the vehicle's trunk subject to inevitable discovery during an inventory search of the vehicle.

The exclusionary rule is a judicially created remedy designed primarily to deter unlawful searches and seizures by the police. *People v. Burola*, 848 P.2d 958, 960 (Colo. 1993); *People v. Fournier*, 793 P.2d 1176, 1179 (Colo.1990); *People v. Schoondermark*, 759 P.2d 715, 718 (Colo.1988); *United States*

*v. Calandra,* 414 U.S. 338, 347–48, 94 S.Ct. 613, 619–20, 38 L.Ed.2d 561 (1974). Under the exclusionary rule, evidence that has been obtained in violation of the Fourth Amendment must be suppressed from presentation during the prosecution's case-in-chief. *Burola,* 848 P.2d at 961; *Fournier,* 793 P.2d at 1179; *Schoondermark,* 759 P.2d at 718 (Colo. 1988). However, not all evidence obtained in violation of the Fourth Amendment must be suppressed under the exclusionary rule. *Burola,* 848 P.2d at 961. Rather, the doctrine of inevitable discovery is recognized as an exception to the exclusionary rule. *Id.* The inevitable discovery exception to the exclusionary rule allows evidence initially discovered in an unconstitutional manner to be received, but only if the prosecution can establish that the information ultimately or inevitably would have been discovered by lawful means. *Id.* at 962. The fact that makes discovery of the evidence inevitable must "arise from circumstances other than those disclosed by the unlawful search itself." *Id.* (quoting *United States v. Thomas,* 955 F.2d 207, 211 (4th Cir.1992)).

The United States Supreme Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents. *South Dakota v. Opperman,* 428 U.S. 364, 373, 96 S.Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976). The purpose of an inventory search is to protect an owner's property while it is in the custody of the police, to ensure against claims of lost, stolen, or vandalized property, and to guard the police from danger. *Colorado v. Bertine,* 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987). Thus, as the majority acknowledges, an "officer who has validly taken a vehicle into custody may make an inventory search of the contents of the vehicle." Maj. op. at 1106.

In the case before us, Sergeant Mitchell informed the respondents that the rental car would be seized pursuant to section 42–5–107, which provides:

> All peace officers are authorized to take and hold possession of any motor vehicle ... if such officer has good and sufficient reason to believe that the motor vehicle or component part is not in the rightful possession of the driver or person in charge thereof.

§ 42–5–107(1), 17 C.R.S. (1993). Sergeant Mitchell had good and sufficient reason to believe that the respondents were not in rightful possession of this rental vehicle. Bracket first produced a rental agreement for a vehicle which he was not driving, then produced an unsigned rental agreement for the proper vehicle. More importantly, both Officer Hoey and Sergeant Mitchell noted that the rental agreement restricted the use of the vehicle to Arizona and Nevada, thereby indicating to the officers that the respondents were in violation of the rental agreement. Sergeant Mitchell therefore properly believed that the respondents were not authorized to use the vehicle in Colorado and that they were not in rightful possession of the vehicle.[1]

The majority states that "[a]t the time of the search of the vehicle, the officers' temporary detention of the vehicle had not yet ripened into an impoundment. Therefore, a full inventory search was not permissible." Maj. op. at 1105. However, the question of whether a detention has ripened into an impoundment does not preclude the inevitable discovery of evidence. The record reflects that at the time of the search, Sergeant Mitchell had already decided to seize the rental vehicle and hold it for investigation pursuant to section 42–5–107 based on his good and reasonable suspicion that the respondents were not in rightful possession of the vehicle. Upon taking custody of the

---

1. Section 18–4–402, 8B C.R.S. (1986), provides:
    (1) A person commits theft of rental property if he:
    (a) Obtains the temporary use of personal property of another, which is available only for hire, ... knowing that such use is without the consent of the person providing the personal property. ...

Here, the use of the rental vehicle in the state of Colorado was without the consent of the rental company. Therefore, the officers could reasonably believe that the rental vehicle was a stolen vehicle.

vehicle, it would have been proper to conduct an inventory search of the vehicle, and such a search would inevitably have been conducted as a matter of state patrol policy. Under the inevitable discovery doctrine, the fact that the inventory search took place on the road-side rather than at the state patrol office does not preclude the admissibility of the evidence found in the vehicle's trunk. I therefore dissent.

I am authorized to say that Justice SCOTT joins in this dissent.